## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IFC CREDIT CORPORATION, an Illinois
corporation

Plaintiff,

v.

MISSION OF NEVADA, INC.

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

```
FILED
MAY 9, 2008                    YM
Case No.  08CV2713
          JUDGE CASTILLO
          MAGISTRATE JUDGE KEYS
```

### VERIFIED COMPLAINT

NOW COMES IFC CREDIT CORPORATION by and through one of its attorneys, BETH ANNE ALCANTAR of IFC CREDIT CORPORATION, and for its Complaint against the Defendant, Mission of Nevada, Inc., alleges and states as follows:

### FACTS APPLICABLE TO EACH COUNT - THE PARTIES

1.       Plaintiff, IFC Credit Corporation ("IFC") was and now is a corporation incorporated under the laws of the State of Illinois, having its principal place of business at 8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053.

2.       Videolocity International, Inc. is a Nevada corporation, and has its principal place of business in the State of Nevada.

3.       Mission of Nevada, Inc. ("Mission of Nevada, Inc.") is the Corporate Guarantor, and has its principal place of business in the State of Nevada. Defendant, Mission of Nevada, Inc., executed relevant documents which are the subject of this lawsuit.

## JURISDICTION AND VENUE

4.      This court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds, exclusive of interest and cost, the sum of $907,508.95 and is between citizens of different states.   Venue is proper pursuant to 28 U.S.C. §1391(a)(1). Additionally, Master Lease Agreement No. 801026 (the "Master Lease"), and the Guaranty (as defined below) were executed by the Defendant and are the subject matter of this suit. Those documents contain forum selection clauses designating this judicial district as the exclusive jurisdiction and venue for this action.

## BREACH OF GUARANTY OF MISSION OF NEVADA, INC.
## LEASE CONTRACT 801026-001 BY VIDEOLOCITY INTERNATIONAL, INC.

5.      On or about December 31, 2003, Videolocity International, Inc. entered into the Master Lease attached hereto as **"Exhibit A"** and incorporated herein by reference.

6.      On or about December 31, 2003 Mission of Nevada, Inc entered into the Guaranty, attached hereto as **"Exhibit B"** and incorporated herein by reference.

7.      On or about December 31, 2003, Videolocity International, Inc., as lessee, entered into Equipment Lease Agreement No. 801026, schedule 001 ("Lease 801026-001") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment").  A copy of the lease bearing a description of the Equipment is attached and incorporated as **"Exhibit C."**

8.      Videolocity International, Inc. took delivery of and accepted the Equipment on or about December 31, 2003 (See Delivery and Acceptance as part of Exhibit C).

9.      Lease 801026-001 obligates Videolocity International, Inc. to make 48 consecutive monthly payments to the lessor in the amount of $13,534.00 each, inclusive of sales tax where applicable.

2

10.    Lease 801026-001 is controlled by the terms of the Master Lease, which provides at Paragraph 17 that in the event Videolocity International, Inc. fails to pay any rental payment as scheduled, the lessor may declare the entire amount due under Leases immediately due and payable (the "Accelerated Balance").

11.    Videolocity International, Inc. has failed and/or refused to pay one or more rental payments to IFC when due.

12.    After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC pursuant to Lease 801026-001 is not less than $242,149.20, exclusive of attorney's fees, costs, and other applicable charges accruing pursuant to Lease 801026-001, as well as interest thereon.

13.    Defendant Mission of Nevada, Inc. unconditionally and personally guaranteed the performance of Videolocity International, Inc. under Lease 801026-001, in writing (See the "Guaranty").

14.    IFC has demanded that Mission of Nevada, Inc. satisfy the indebtedness of Videolocity International, Inc. under Lease 801026-001, but Mission of Nevada, Inc. has failed and/or refused to do so.

15.    Paragraph 18 of the Master Lease requires that in the event of default, Lessee shall pay Lessor's "...Lessee and Guarantor agree to pay Lessor's reasonable attorney fees as damages and costs..."

16.    The obligation of Videolocity International, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest for the deliberate failure to pay of Mission of Nevada, Inc. at the rate provided by Paragraph 18 of the Master Lease, which is 18% per annum.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Mission of Nevada, Inc., jointly and severally with all other defendants in this action, as follows:

      a)     Awarding IFC damages in the principal amount of not less than $242,149.20, together with pre-judgment interest at 18% from the date of default, which is $242,149.20 through May 15, 2008, until such sum is paid in full;

      b)     Awarding IFC its attorney's fees, collection and court costs incurred in enforcing its rights under Leases; and

      c)     Awarding IFC such other and further relief as this Court deems just and reasonable.

## BREACH OF GUARANTY OF MISSION OF NEVADA, INC.
## LEASE CONTRACT 801026-002 BY VIDEOLOCITY INTERNATIONAL, INC.

17.    On or about December 31, 2003, Videolocity International, Inc. entered into the Master Lease attached hereto as **"Exhibit A"** and incorporated herein by reference.

18.    On or about December 31, 2003 Mission of Nevada, Inc entered into the Guaranty, attached hereto as **"Exhibit B"** and incorporated herein by reference.

19.    On or about December 31, 2003, Videolocity International, Inc., as lessee, entered into Equipment Lease Agreement No. 801026, schedule 002 ("Lease 801026-002") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of the Lease 801026-002 bearing a description of the Equipment is attached and incorporated as **"Exhibit D."**

20.    Videolocity International, Inc. took delivery of and accepted the Equipment on or about December 31, 2003 (See Delivery and Acceptance as part of Exhibit D).

21.    Lease 801026-002 obligates Videolocity International, Inc. to make 48 consecutive monthly payments to the lessor in the amount of $4,498.00 each, inclusive of sales tax where applicable.

22.     Lease 801026-002 is controlled by the terms of the Master Lease, which provides at Paragraph 17 that in the event Videolocity International, Inc. fails to pay any rental payment as scheduled, the lessor may declare the entire amount due under Leases immediately due and payable (the "Accelerated Balance").

23.     Videolocity International, Inc. has failed and/or refused to pay one or more rental payments to IFC when due.

24.     After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC pursuant to Lease 801026-002 is not less than $164,935.25, exclusive of attorney's fees, costs, and other applicable charges accruing pursuant to Lease 801026-002, as well as interest thereon.

25.     Defendant Mission of Nevada, Inc. unconditionally and personally guaranteed the performance of Videolocity International, Inc. under Lease 801026-002, in writing (See the "Guaranty").

26.     IFC has demanded that Mission of Nevada, Inc. satisfy the indebtedness of Videolocity International, Inc. under Lease 801026-002, but Mission of Nevada, Inc. has failed and/or refused to do so.

27.     Paragraph 18 of the Master Lease requires that in the event of default, Lessee shall pay Lessor's "...Lessee and Guarantor Lessor's agree to pay reasonable attorney fees as damages and costs..."

28.     The obligation of Videolocity International, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest for the deliberate failure to pay of Mission of Nevada, Inc. at the rate provided by Paragraph 18 of the Master Lease, which is 18% per annum.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Mission of Nevada, Inc., jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $164,935.25, together with pre-judgment interest at 18% from the date of default, which is $164,935.25 through May 15, 2008, until such sum is paid in full;

b)    Awarding IFC its attorney's fees, collection and court costs incurred in enforcing its rights under Leases; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

## BREACH OF GUARANTY OF MISSION OF NEVADA, INC.
## LEASE CONTRACT 801026-003 BY VIDEOLOCITY INTERNATIONAL, INC.

29.    On or about December 31, 2003, Videolocity International, Inc. entered into the Master Lease attached hereto as "**Exhibit A**" and incorporated herein by reference.

30.    On or about December 31, 2003 Mission of Nevada, Inc entered into the Guaranty, attached hereto as "**Exhibit B**" and incorporated herein by reference.

31.    On or about December 31, 2003, Videolocity International, Inc., as lessee, entered into Equipment Lease Agreement No. 801026, schedule 003 ("Lease 801026-003") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of the lease bearing a description of the Equipment is attached and incorporated as "**Exhibit E.**"

32.    Videolocity International, Inc. took delivery of and accepted the Equipment on or about December 31, 2003 (See Delivery and Acceptance as part of Exhibit E).

33.    Lease 801026-003 obligates Videolocity International, Inc. to make 48 consecutive monthly payments to the lessor in the amount of $8,844.00 each, inclusive of sales tax where applicable.

34.     Lease 801026-003 is controlled by the terms of the Master Lease, which provides at Paragraph 17 that in the event Videolocity International, Inc. fails to pay any rental payment as scheduled, the lessor may declare the entire amount due under Leases immediately due and payable (the "Accelerated Balance").

35.     Videolocity International, Inc. has failed and/or refused to pay one or more rental payments to IFC when due.

36.     After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC pursuant to Lease 801026-003 is not less than $322,376.25, exclusive of attorney's fees, costs, and other applicable charges accruing pursuant to Lease 801026-002, as well as interest thereon.

37.     Defendant Mission of Nevada, Inc. unconditionally and personally guaranteed the performance of Videolocity International, Inc. under Lease 801026-003, in writing (See the "Guaranty").

38.     IFC has demanded that Mission of Nevada, Inc. satisfy the indebtedness of Videolocity International, Inc. under Lease 801026-003, but Mission of Nevada, Inc. has failed and/or refused to do so.

39.     Paragraph 18 of the Master Lease requires that in the event of default, Lessee shall pay Lessor's "...Lessee and Guarantor Lessor's agree to pay reasonable attorney fees as damages and costs..."

40.     The obligation of Videolocity International, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest for the deliberate failure to pay of Mission of Nevada, Inc. at the rate provided by Paragraph 18 of the Master Lease, which is 18% per annum.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Mission of Nevada, Inc., jointly and severally with all other defendants in this action, as follows:

      a)      Awarding IFC damages in the principal amount of not less than $322,376.25, together with pre-judgment interest at 18% from the date of default, which is $322,376.25 through May 15, 2008, until such sum is paid in full;

      b)      Awarding IFC its attorney's fees, collection and court costs incurred in enforcing its rights under Leases; and

      c)      Awarding IFC such other and further relief as this Court deems just and reasonable.

## BREACH OF GUARANTY OF MISSION OF NEVADA, INC.
## LEASE CONTRACT 801026-004 BY VIDEOLOCITY INTERNATIONAL, INC.

41.      On or about December 31, 2003, Videolocity International, Inc. entered into the Master Lease attached hereto as **"Exhibit A"** and incorporated herein by reference.

42.      On or about December 31, 2003 Mission of Nevada, Inc entered into the Guaranty, attached hereto as **"Exhibit B"** and incorporated herein by reference.

43.      On or about December 31, 2003, Videolocity International, Inc., as lessee, entered into Equipment Lease Agreement No. 801026, schedule 004 ("Lease 801026-004") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of the lease bearing a description of the Equipment is attached and incorporated as **"Exhibit F."**

44.      Videolocity International, Inc. took delivery of and accepted the Equipment on or about December 31, 2003 (See Delivery and Acceptance as part of Exhibit F).

45.      Lease 801026-004 obligates Videolocity International, Inc. to make 48 consecutive monthly payments to the lessor in the amount of $4,363.00 each, inclusive of sales tax where applicable.

46.     Lease 801026-004 is controlled by the terms of the Master Lease, which provides at Paragraph 17 that in the event Videolocity International, Inc. fails to pay any rental payment as scheduled, the lessor may declare the entire amount due under Leases immediately due and payable (the "Accelerated Balance").

47.     Videolocity International, Inc. has failed and/or refused to pay one or more rental payments to IFC when due.

48.     After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC pursuant to Lease 801026-004 is not less than $141,432.75, exclusive of attorney's fees, costs, and other applicable charges accruing pursuant to Lease 801026-004, as well as interest thereon.

49.     Defendant Mission of Nevada, Inc. unconditionally and personally guaranteed the performance of Videolocity International, Inc. under Lease 801026-004, in writing (See the "Guaranty").

50.     IFC has demanded that Mission of Nevada, Inc. satisfy the indebtedness of Videolocity International, Inc. under Lease 801026-004, but Mission of Nevada, Inc. has failed and/or refused to do so.

51.     Paragraph 18 of the Master Lease requires that in the event of default, Lessee shall pay Lessor's "...Lessee and Guarantor Lessor's agree to pay reasonable attorney fees as damages and costs..."

52.     The obligation of Videolocity International, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest for the deliberate failure to pay of Mission of Nevada, Inc. at the rate provided by Paragraph 18 of the Master Lease, which is 18% per annum.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Mission of Nevada, Inc., jointly and severally with all other defendants in this action, as follows:

a) Awarding IFC damages in the principal amount of not less than $141,432.75, together with pre-judgment interest at 18% from the date of default, which is $141,432.75 through May 15, 2008, until such sum is paid in full;

b) Awarding IFC its attorney's fees, collection and court costs incurred in enforcing its rights under Leases; and

c) Awarding IFC such other and further relief as this Court deems just and reasonable.

## BREACH OF GUARANTY OF MISSION OF NEVADA, INC.
## LEASE CONTRACT 801026-005 BY VIDEOLOCITY INTERNATIONAL, INC.

53. On or about December 31, 2003, Videolocity International, Inc. entered into the Master Lease attached hereto as **"Exhibit A"** and incorporated herein by reference.

54. On or about December 31, 2003 Mission of Nevada, Inc entered into the Guaranty, attached hereto as **"Exhibit B"** and incorporated herein by reference.

55. On or about December 31, 2003, Videolocity International, Inc., as lessee, entered into Equipment Lease Agreement No. 801026, schedule 005 ("Lease 801026-005") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of the lease bearing a description of the Equipment is attached and incorporated as **"Exhibit G."**

56. Videolocity International, Inc. took delivery of and accepted the Equipment on or about December 31, 2003 (See Delivery and Acceptance as part of Exhibit G).

57. Lease 801026-005 obligates Videolocity International, Inc. to make 48 consecutive monthly payments to the lessor in the amount of $1,072.69 each, inclusive of sales tax where applicable.

58.   Lease 801026-005 is controlled by the terms of the Master Lease, which provides at Paragraph 17 that in the event Videolocity International, Inc. fails to pay any rental payment as scheduled, the lessor may declare the entire amount due under Leases immediately due and payable (the "Accelerated Balance").

59.   Videolocity International, Inc. has failed and/or refused to pay one or more rental payments to IFC when due.

60.   After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC pursuant to Lease 801026-005 is not less than $36,615.50, exclusive of attorney's fees, costs, and other applicable charges accruing pursuant to Lease 801026-005, as well as interest thereon.

61.   Defendant Mission of Nevada, Inc. unconditionally and personally guaranteed the performance of Videolocity International, Inc. under Lease 801026-005, in writing (the "Guaranty").

62.   IFC has demanded that Mission of Nevada, Inc. satisfy the indebtedness of Videolocity International, Inc. under Lease 801026-005, but Mission of Nevada, Inc. has failed and/or refused to do so.

63.   Paragraph 18 of the Master Lease requires that in the event of default, Lessee shall pay Lessor's "...Lessee and Guarantor Lessor's agree to pay reasonable attorney fees as damages and costs..."

64.   The obligation of Videolocity International, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest for the deliberate failure to pay of Mission of Nevada, Inc. at the rate provided by Paragraph 18 of the Master Lease, which is 18% per annum.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Mission of Nevada, Inc., jointly and severally with all other defendants in this action, as follows:

        a)    Awarding IFC damages in the principal amount of not less than $36,615.50, together with pre-judgment interest at 18% from the date of default, which is $36,615.50 through May 15, 2008, until such sum is paid in full;

        b)    Awarding IFC its attorney's fees, collection and court costs incurred in enforcing its rights under Leases; and

        c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

**WHEREFORE, IFC CREDIT CORPORATION** respectfully requests that this Court enter judgment in its favor and against defendant Mission of Nevada, Inc., jointly and severally with all other defendants in this action, as follows:

        a)    Awarding IFC damages in the principal amount of not less than $907,808.95, together with pre-judgment interest at 18% from the date of default, which is $907,508.95 through May 15, 2008, totaling $907,508.95, until such sum is paid in full;

        b)    Awarding IFC its attorney's fees, collection and court costs incurred in enforcing its rights under Leases; and

        c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

Respectfully submitted,

IFC CREDIT CORPORATION

By: /s/ Beth Anne Alcantar
           Attorney for Plaintiff

Beth Anne Alcantar, IARDC No. 06226582
Attorney for Plaintiff,
IFC Credit Corporation
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053
(847) 663-6700

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned, Robert Polonsky, Agent of IFC Credit Corporation, certifies that the statements set forth in the foregoing instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes them to be true.

Robert Polonsky

Beth Anne Alcantar, IARDC No. 06226582
Attorneys for Plaintiff,
IFC Credit Corporation
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053
(847) 663-6700

Mission of Nevada, Inc.

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRIC OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IFC Credit Corporation, an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| MISSION OF NEVADA, INC. | ) ) ) | |
| Defendant | ) ) ) ) ) ) | |

### F.R.C.P. Rule 7.1 Disclosure Statement

The undersigned, counsel of record for IFC Credit Corporation furnishes the following list in compliance with F.R.C.P. 7.1:

1.    IFC Credit Corporation does not have a parent corporation.

2.    No publicly held company owns 10 percent or more of IFC Credit Corporation's stock.

Respectfully Submitted,

IFC Credit Corporation

Dated: May 9, 2008

By: /s/ BETH ANNE ALCANTAR
One of its Attorneys

Beth Anne Alcantar, IARDC No. 06226582
Attorneys for Plaintiff,
IFC Credit Corporation
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053
(847) 663-6700

IFC CREDIT CORPORATION
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053-2104
888-554-4IFC

MASTER LEASE AGREEMENT NO: 801026

08CV2713

JUDGE CASTILLO      YM

MAGISTRATE JUDGE KEYS

**LESSEE:**

Name: Videolocity International, Inc.

Address: 358 South 700 East, Suite B604

City, State Zip: Salt Lake City, UT 84102

County: Salt Lake

Contact: Robert Holt

Phone: 801-521-2808

[X] Corporation    [ ] Limited Liability Company    [ ] Partnership    [ ] Sole Proprietorship

THIS IS A MASTER LEASE AGREEMENT. THIS AGREEMENT IS COMPRISED OF THE TERMS SET FORTH HEREIN, IN THE VARIOUS SCHEDULES ATTACHED HERETO AND IN ANY CONFIDENTIAL LEASE PROPOSALS EXECUTED FROM TIME TO TIME BY LESSOR AND LESSEE THAT HAVE YET TO BE DOCUMENTED BY A LEASE SCHEDULE AND FUNDED. REFER TO SCHEDULES ATTACHED HERETO FROM TIME TO TIME FOR SPECIFIC EQUIPMENT DESCRIPTIONS AND PAYMENT AMOUNTS SET FORTH THEREIN.

## TERMS AND CONDITIONS

1. **LEASE.** Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor, the personal property set forth on the lease schedule which may from time to time be executed by Lessor and Lessee ("Schedule") upon the terms and conditions set forth in this Master Lease Agreement ("Lease") as supplemented by the terms and conditions which may be set forth in the appropriate Schedule identifying such items of personal property, together with all replacement parts, additions, and accessories incorporated therein and/or affixed thereto, (all collectively referred to hereinafter as "Equipment"). Each Schedule shall incorporate by reference the terms and conditions of this Lease and shall constitute a separate and independent lease of the Equipment. Neither this Lease nor any Schedule hereto may be cancelled or terminated except as expressly provided herein or therein. This Lease is irrevocable by Lessee for the full term of any Schedule and for the aggregate rentals provided therein.

2. **RENTALS.** During and for the original term hereof, Lessee hereby agrees to pay Lessor as and for rental of the Equipment the amounts specified in the Schedule as monthly or other calendar period rental multiplied by the number of months or periods specified in the Schedule. Rental per day for the period from the Lease Commencement Date specified in the Schedule to the Initial Term Start Date shall be equal to 1/30th of the Lease Rental Payment and shall be due "in advance" of the "Initial Term Start Date." This payment due date shall be specified by Lessor or its assign in the Schedule or other supplementary documents to this Agreement. All payments shall be made at the office of the Lessor at 8700 North Waukegan Road, Suite 100, Morton Grove, IL 60053 or as otherwise directed by Lessor in writing. Lease payments not received by the Lessor on or prior to the payment due date shall be delinquent, and shall be subject to late charges specified in Paragraph 18 herein. If Lessor shall at any time record rent after it shall become due or shall accept less than the total amount due, such acceptance shall not constitute a waiver or an accord and satisfaction of any greater sum due, nor shall such acceptance be construed as a waiver of any or all of Lessor's rights hereunder.

3. **EQUIPMENT AND LIABILITY.** Lessor, at the request of Lessee, shall order the Equipment described in the Schedule from a supplier selected by Lessee. Lessor shall not be liable for specific performance of this Lease or damages or in any manner whatsoever, if, for any reason, supplier fails to accept such order or delays or fails to fill the order. Lessee agrees to accept such Equipment and to complete and deliver to Lessor the Certificate Of Acceptance provided by Lessor upon acceptance of the Equipment by Lessee. In the event Lessee rightfully rejects any items of Equipment, Lessee shall, within ten (10) days of delivery, notify Lessor and supplier in writing of any defects or other discrepancies with respect to such Equipment. In the event of such rejection by Lessee, Lessor shall be deemed by Lessor, pay Lessor any amounts theretofore paid by Lessor in respect of the purchase of such Equipment, and upon such payment, Lessee shall be subrogated to Lessee's claims, if any, against the supplier. If Lessee fails to execute and deliver to Lessor the Certificate of Acceptance or fails to notify Lessor or supplier in writing of any defects in or other discrepancies with respect to the Equipment within ten (10) days of delivery of the Equipment, it shall be an irrefutable presumption, as between Lessor and Lessee, that such Equipment has been unconditionally accepted by Lessee to Lessee hereunder, and Lessee's obligations shall be unconditional and shall not be subject to any set-off, defense, deduction, or counterclaim whatsoever.

4. **PLACE OF USE; INSPECTION.** Lessee shall keep the Equipment at the location specified in the Schedule. Lessee covenants and agrees that the Equipment shall be used by employees of the Lessee only, and the Equipment, or any part thereof, shall not be loaned or sublet to others for their own uses. Whenever requested by Lessor, Lessee shall promptly advise Lessor of the exact location of the Equipment. Lessee shall not change the location of the Equipment without the express prior written permission of Lessor. Lessor, from time to time, may enter the premises where the Equipment is located and inspect and label same.

5. **ADVANCE RENTALS AND FINANCIAL INFORMATION.** At the Lessee's option, any advance rentals or security deposit paid by Lessee may be applied by Lessor to cure any default of Lessee under this Lease in which event Lessee shall promptly restore the advance rental or security deposit to its full amount as set forth in the Schedule. Each year within ten (10) days after completion and in no event more than sixty (60) days after Lessee's fiscal year end, Lessee shall deliver in a form satisfactory to Lessor and its assignees true, correct, and complete annual audited consolidated financial statements with an unqualified opinion, and Federal Income Tax Returns including all Schedules thereof. Financial statements are unaudited. Lessee shall also deliver its quarterly consolidated financial statements (which shall be in a form satisfactory to Lessor and its assignees) within sixty (60) days after the end of each of the first three (3) fiscal quarters. Lessee shall, and shall cause any guarantor(s) of this Lease to, furnish to Lessor within five (5) days of any request thereof by Lessor any credit or financial information of the Lessee or such guarantor(s) (including, without limitation, their respective most recent financial statements, balance sheets, and income statements) as Lessor shall request from time to time. Lessor is hereby authorized to issue appropriate press releases, include the transaction in Lessor's newsletter, and/or to cause a tombstone to be published announcing the consummation of this transaction and the aggregate amount thereof.

6. **DISCLAIMER OF WARRANTY. LESSOR IS NOT THE MANUFACTURER OR THE SUPPLIER OF THE EQUIPMENT, AND IS NOT A DEALER IN SIMILAR EQUIPMENT. LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT, EXPRESS OR IMPLIED, WITH RESPECT TO THE DESIGN, CONDITION, DURABILITY, SUITABILITY, FITNESS FOR USE OR PARTICULAR PURPOSE, OR MERCHANTABILITY OF THE EQUIPMENT IN ANY RESPECT. AS BETWEEN LESSOR AND LESSEE, THE EQUIPMENT SHALL BE ACCEPTED AND LEASED BY LESSEE "AS IS", "WHERE IS", AND "WITH ALL FAULTS." LESSEE ACKNOWLEDGES THAT LESSEE HAS SELECTED THE EQUIPMENT AND THAT LESSOR HAS NOT RECOMMENDED SUPPLIER. LESSOR SHALL HAVE NO OBLIGATION TO INSTALL, MAINTAIN, ERECT, TEST, ADJUST, OR SERVICE THE EQUIPMENT. REGARDLESS OF CAUSE, LESSEE AGREES NOT TO ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR FOR LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL LESSOR BE RESPONSIBLE FOR ANY DAMAGES OR COSTS WHICH MAY BE ASSESSED AGAINST LESSEE IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES LETTERS PATENT. LESSOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS LEASE FOR TAX OR ACCOUNTING PURPOSES.** Lessee agrees to assert all such claims directly with the supplier, and will not assert any such claims or defenses against Lessor or Lessor's assignee. Lessee assigns to, authorizes, and appoints Lessor to enforce, in its own name and at its own expense, any claim, warranty, agreement or representation against supplier, but Lessor assumes no obligation as to the extent or enforceability thereof. No delay is diligent, defect or unfitness of the Equipment, loss or damage thereto, or any other circumstances shall relieve Lessee of its obligations under this Lease, which obligations are absolute and unconditional. Supplier is not an agent of Lessor and no employee of supplier is authorized to waive, requirement, or otherwise alter any provision of this Lease.

7. **ERRORS IN ESTIMATED COST.** The amount of each rent payment and the advance rentals (collectively referred to in this paragraph only as "rent") are based upon the estimated total cost of the equipment (including taxes, transportation, and any other charges). The rent shall be adjusted proportionally if the actual cost of the Equipment differs from estimated cost. Lessee hereby authorizes Lessor to correct the figures set forth in the Schedule when the actual cost is known, and to add or reduce to the amount of each rent payment and any sales or other tax that may be imposed on the payments. If the actual cost of the Equipment is the aggregate differs from the estimated cost by more than ten percent (10%), Lessor, at its own option, may terminate this Lease by giving written notice to the Lessee within five (5) days after receiving notice of the actual cost.

8. **TITLE; LIENS; TAXES.** The Equipment is, and shall at all times be and remain (i) the sole and exclusive property of Lessor, and the Equipment, or any part thereof, or title, or interest therein or thereto other than as expressly set forth in this Lease, (ii) personal property notwithstanding that the Equipment or any part thereof may ever be or hereafter become in any manner affixed, attached to, or embedded in, or permanently resting upon, real property or any building thereon. Lessee agrees to affix nameplates or decals to the Equipment indicating Lessor's ownership when so requested by Lessor. Lessee shall keep the Equipment free and clear of liens, levies, and encumbrances and shall pay all license and registration fees, assessments, filing or recording fees, documentary stamp taxes, fines payable under certificate of title laws with respect to motor vehicles, sales/use taxes, personal property taxes, excise taxes (including value added taxes, and all other taxes (local, State and Federal) which may now or hereafter be imposed upon the ownership, lease, rental, sale, purchase, possession, or use of the Equipment whether or not the same shall be assessed against the Lessee, or on or measured by Lessor's taxable income. If such taxes or fees are levied against the Lessor, or if Lessee fails to make any payment required hereby, the Lessor shall have the right, but not the obligation, to pay such taxes or fees, whether levied against the Lessor or the Lessee. In each event the Lessee shall reimburse the Lessor therefore within five (5) days after the receipt of an invoice and for the failure to make such reimbursement when due the Lessor shall have all remedies provided herein with respect to the nonpayment of rent thereunder. Lessee shall give Lessor immediate notice of any attachment or other judicial process, liens, or encumbrances affecting the Equipment and shall indemnify and save Lessor harmless from any loss or damage caused thereby.

9. **FILING.** Lessee hereby authorizes Lessor to file this Lease, any financing statements and amendments thereto, security agreements, applications or other documents under certificate of title laws with respect to any or all of the Equipment or any collateral pledged by Lessee without the signature of Lessee thereon, and if Lessee's signature is required thereon by law, Lessee appoints Lessor as its attorney-in-fact to execute any such instruments and/or documents. Lessee shall execute such supplemental instruments, financing statements, and other documents of any kind as Lessor deems to be necessary or advisable to carry out the purposes of this Lease and any Schedule hereunder and shall otherwise cooperate to defeat the title of that Lessor by filing or otherwise. Lessee, upon demand, shall promptly pay all filing costs and fees incurred in the preparation and filing of such documents. To secure all of Lessee's indebtedness, liabilities and obligations to Lessor under this Lease or otherwise, Lessee hereby grants to Lessor a lien on and security interest in and to the Equipment, together with all substitutions and additions therefore, all parts and components thereof and accessions thereto and the proceeds of all of the foregoing, including proceeds of insurance.

10. **INSURANCE.** Commencing on the date risk of loss passes to Lessor from the supplier and continuing until Lessee has returned the Equipment to Lessor pursuant to Paragraph 14, Lessee, at its expense, shall keep the Equipment insured against all risks of loss or damage from every cause whatsoever for the greater of the total rent for the term of this Lease or the full un-depreciated replacement value (new) of the Equipment (declaring softness) corresponding to the date of loss or the full replacement value thereof, whichever is higher, plus all taxes, transportation and installation costs. Lessee shall carry public liability insurance, both personal injury and property damage, insuring the Equipment, which shall be of a type, form, in amounts, with companies and contain terms and conditions satisfactory to Lessor with an AM Best or similar recognized rating organization rating of "A" or better. Certificates of insurance or other evidence satisfactory to Lessor, including the original or certified copies of the actual policies showing the existence of insurance in accordance therewith, and the terms, conditions and payments therefore shall be delivered to Lessor forthwith. Certificates must include a 30 day prior written notice of cancellation clause to Lessor. Lessor and any assignee of Lessor with respect to any Schedule attached to this Lease shall be named as loss payee and additional insured for purposes of liability and physical damage insurance. In the event Lessee fails to insure the property pursuant hereto or fails to provide evidence of insurance within 5 days after delivery of the Equipment Lessor may obtain such insurance at Lessee's expense. Lessee shall pay a non-business fee of 1/5 of 1% of the cost of equipment per month for force-combine the Equipment is not insured to compensate Lessor for the additional risk of not having valid insurance. The proceeds of insurance payable as a result of loss or damage to Equipment may be applied, at the option of Lessor; (a) toward the replacement, restoration or repair of Equipment, and/or (b) toward payment of the obligations of Lessee hereunder without affecting Lessee's obligations under this Lease. In the event Lessor elects to apply the insurance proceeds to Lessee's obligations for rent hereunder, Lessee's obligation for the rent shall be reduced by the amount of such insurance proceeds, however, Lessee shall be liable for any additional rents due. Such reductions of rents shall be allocated solely to the item or items of rent stolen, damaged or destroyed. Lessee irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any insurance policy.

11. **LOSS; DAMAGE.** Lessee assumes and shall bear the risk of loss and damage to the Equipment from every cause whatsoever, whether or not insured. In the event of any loss or damage to the Equipment, Lessee at the option of Lessor shall: (a) place the same in good repair, condition and working order; or (b) replace the same with new Equipment; or (c) pay to Lessor the following amount, the greater of (i) the total unpaid rentals for the entire term hereof, (discounted to present value at the rate of six (6%) percent per annum) plus Lessor's residual interest in such Equipment (herein agreed to be the greater of the fair residual value of the Equipment at the expiration of the lease or twenty (20%) percent of the Equipment's original cost to Lessor) plus any amount due Lessor or Lessor's Assignee pursuant to Paragraph 20 thereof or (2) the fair market value of the Equipment immediately prior to the time of damage. Upon payments pursuant to Subsection (c) herein, together with payment of all other sums owing on said Lease to and including such payment date, Lessor will transfer title to the affected Equipment to Lessee "as is", "where is", "with all faults", and without warranty, express or implied.

12. **GENDER; NUMBER; JOINT AND SEVERAL LIABILITY; AUTHORIZATION; ACCEPTANCE; MISCELLANEOUS.** Wherever that context of this Lease requires, the masculine gender includes the feminine or neuter and the singular number includes the plural; wherever the word "Lessor" is used herein, it shall include all assignees of Lessor; whenever the word "herein" is used referring to this Lease, it shall include the applicable Schedules hereto. If there is more than one Lessee named to this Lease, the liability of each shall be joint and several. Lessee hereby authorizes Lessor to (i) insert equipment serial numbers and other identification in the equipment description when known and (ii) correct any patent errors or omissions in this Lease (iii) insert the effective date of this Lease if omitted at the time of execution by Lessee. This Lease is submitted to Lessor for Lessor's acceptance or rejection and constitutes a continuing and irrevocable offer by Lessee to Lessor, and will not become effective and binding upon Lessor until accepted by an officer of Lessor in writing at its office in Morton Grove, Illinois. The individuals executing this Lease on behalf of Lessee personally warrant that they are doing so pursuant to due authorization and that by so executing this Lease Lessee is bound hereby. Time shall be deemed to be of the essence in the handling of all matters pursuant to this Lease. Notwithstanding any of the provisions of this Lease, neither Lessor nor its assigns shall take any action which would interrupt or disturb the Lessee's quiet enjoyment of the Equipment, except in accordance with provisions of this Lease.

EXHIBIT
A

13. ENTIRE AGREEMENT; NON-WAIVER; 14. SEVERABILITY. This Lease and any Schedules, together with any Confidential Lease Proposals executed from time to time by Lessor and Lessee that have yet to be documented in a Lease Schedule and funded, constitute the entire and only understanding between Lessor and Lessee relating to the subject matter hereof. Any representations, promises or conditions not contained in the aforementioned documents or documents executed in connection herewith or therewith shall not be binding unless in writing and signed by duly authorized representatives of each party. No covenant or condition of this Lease can be waived except by the written consent of Lessor. Any waiver required to be given hereunder shall be given in writing at the address of each party herein set forth, or to such other addresses as either party may subsequently by written notice to the other. Notice shall be deemed given upon the earlier of (a) when received or (b) three days after mailing by certified or registered mail or (c) one day after being sent by reputable overnight carrier. Whenever reference is made herein to the Lease it shall be deemed to include any Schedule attached hereto identifying all Items of Equipment and the applicable term and rent, all of which constitute one indivisible rental of Equipment to which all the terms and provisions hereof apply. If any provision of this Lease is held invalid, such invalidity shall not affect any other provisions hereof and to this end the provisions of this Lease are declared severable.

14. USE AND RETURN OF EQUIPMENT. The Lessee shall exercise due and proper care in the use, repair, and servicing of the Equipment, and at all times and at its own expense shall keep and maintain the leased property in good working condition, order, and repair. In the event Lessee returns the Equipment in a damaged condition, Lessee shall continue to pay rent until such time as Lessee has placed the Equipment in good and workmanlike condition. Lessor shall have no obligation to repair the Equipment independent of Lessee's obligation to do so. The Lessee shall make no alteration except to enhance/improve the leased property without the written consent of the Lessor. Upon the expiration or termination of this Lease, from any cause, Lessee at its sole expense shall forthwith properly pack and return the Equipment to Lessor, or to such place designated by Lessor within the continental United States, immediately upon the termination or expiration of this Lease, in the same condition as when received by Lessee, reasonable wear and tear alone excepted. If Lessor does not automatically renew the lease pursuant to Paragraph 15 and if after the expiration of ten (10) business days Lessee has not returned the Equipment to Lessor, Lessee shall pay as liquidated damages an amount equal to twice the monthly or other period payment which is due immediately prior to the termination or expiration of the Lease for each month or period, or portion thereof, that Lessee possesses the Equipment until such time as the Equipment has been delivered to and accepted by Lessor. Lessee agrees to pay Lessor a re-stocking fee of five percent (5%) of the original Equipment cost and to provide Lessor with a sworn certificate with respect to the de-installation of the Equipment describing the de-installed Equipment according to quantity, description and serial number and shall certify that you have performed all of your obligations as provided hereunder and, Lessee further agrees to pay Lessor such other actual and administrative fees as Lessor may assess for preparation, modifications and termination of the Lease and performing an equipment inspection (if necessary); these obligations shall survive the termination of this Lease. All replacement parts, additions, and accessories incorporated in or affixed to the Equipment after the commencement of this Lease shall become the property of Lessor, and shall be deemed to be included as part of the Equipment described in any Schedule.

15. RENEWAL. AT LEAST ONE HUNDRED EIGHTY DAYS, BUT NOT GREATER THAN TWO HUNDRED TEN DAYS, PRIOR TO THE EXPIRATION OF ANY SCHEDULE, LESSEE SHALL NOTIFY LESSOR IN WRITING OF LESSEE'S INTENTION TO TERMINATE SUCH SCHEDULE ("TERMINATION NOTICE"), OR TO PURCHASE THE EQUIPMENT PURSUANT TO ANY END OF TERM OPTION SO GRANTED, IF ANY (PURCHASE NOTICE"). IF LESSEE FAILS TO NOTIFY LESSOR PURSUANT TO THIS SECTION OR FAILS TO CONSUMMATE ANY END OF TERM OPTION FOR ANY REASON, SUCH TERMINATION OPTION OR END OF TERM OPTION SHALL BE DEEMED NOT TO HAVE BEEN EXERCISED AND THE TERMS OF SUCH SCHEDULE MAY IN LESSOR'S SOLE DISCRETION BE EXTENDED UPON ALL OF THE TERMS AND CONDITIONS AS STATED THEREIN FOR A PERIOD OF ONE YEAR ("RENEWAL TERM") FROM ITS EXPIRATION DATE WITHOUT THE NECESSITY OF THE EXECUTION OF ANY FURTHER INSTRUMENT OR DOCUMENT, AND SAID SCHEDULE MAY, IN LESSOR'S SOLE DISCRETION, BE EXTENDED FROM YEAR TO YEAR THEREAFTER UNDER THE SAME TERMS AND CONDITIONS UNTIL TERMINATED.

16. DEFAULT. Any of the following events or conditions with respect to any Schedule related to this Lease shall constitute an event of default hereunder: (a) Lessee's failure to pay when due any rent or other amount due hereunder; (b) Lessee's or any guarantor's default in performing any other term, covenant or condition hereof or under any other agreement between Lessor and Lessee or any guarantor if such default is not cured within five (5) days after receipt of written notice thereof except as provided in (c) or (d) of this Paragraph 16; (c) seizure of any Equipment under legal process; (d) Lessee's failure to comply with its obligations under Paragraph 10 or Paragraph 19; (e) the filing by or against Lessee or any guarantor of a petition for reorganization of liquidation under the Bankruptcy Code or any amendment thereto or under any other insolvency law providing for the relief of debtors; (f) the voluntary or involuntary making of an assignment of a substantial portion of its assets by Lessee or any guarantor for the benefit of creditors, appointment of a receiver or trustee for Lessee or any guarantor or for any of Lessee's or any guarantor's assets, institution by or against Lessee or any guarantor of any formal or informal proceeding for dissolution, liquidation, settlement of claims against or winding up of the affairs of Lessee or any guarantor, or the making by Lessee or any guarantor of a transfer of all or a material portion of Lessee's or any guarantor's assets or inventory not in the ordinary course of business; (g) the conditions of Lessee's, or guarantor's affairs shall so change as to, in Lessor's opinion, impair the safety of any Equipment or Lessee's credit risk; (h) any representation or warranty of Lessee or any guarantors in this Lease Agreement or in any document executed by Lessee or any guarantor in connection herewith shall prove to be untrue in any material respect when made; (i) Lessee shall merge, consolidate with or into another entity or convey, transfer, lease or otherwise dispose of (in one or a series of transactions) all or substantially all its assets (whether now owned or hereafter acquired) or the existing shareholders of Lessee on the date hereof shall at any time cease to own at least 51% of the voting stock of the Lessee on a fully diluted basis; (j) any guaranty shall be repudiated or cease to be enforceable in accordance with its terms.

17. REMEDIES. Upon default as to this Lease or as to any Schedule, Lessor shall have the right to exercise any one or more of the following remedies as Lessor in its sole discretion shall elect: (a) upon written notice to Lessee terminate in cancel this Lease and Lessee's rights hereunder; (b) declare all sums due and to become due hereunder immediately due and payable; (c) without terminating this Lease, require Lessee to properly deliver the Equipment in the manner specified in Paragraph 14 hereof; (d) without terminating this Lease, to directly or by its agent, and without notice or liability or legal process take possession of any premises where any Equipment may be located, take possession of such Equipment, and either store it on said premises without charge or remove same, all without liability to Lessor or its agents for such entry, for or for damage to property or otherwise (LESSEE HEREBY VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY WAIVES ITS RIGHTS TO NOTICE, LEGAL PROCESS, PRIOR JUDICIAL HEARING AND DAMAGE FOR TRESPASS); (e) without terminating the Lease, sell any or all of the Equipment at public or private sale, with or without notice to Lessee or advertisement, or otherwise dispose of, hold, use, operate, lease to others or keep idle such Equipment all free and clear of any rights of Lessee and without any duty to account to Lessee for such proceeds of such sale or release of the Equipment to Lessee's obligations hereunder corresponding to the date of default, after deducting from such proceeds all costs and expenses of repossession and disposition, and reasonable attorneys' fees; (f) exercise any other rights or remedy which may be available to it at law or in equity; and (g) cancel any purchase option previously granted to Lessee. Lessee shall promptly pay any enabling deficiency, together with interest at the highest rate provided by law (and if there is no legal limit, then one and one-half (1.5%) percent per month), and Lessor's reasonable attorneys' fees if legal process or other judgment shall collect such deficiency. If Lessor is unable to repossess the Equipment for any reason, the Equipment shall be deemed a total loss and Lessee shall pay to Lessor the amount due pursuant to Paragraph 11(c). No termination, repossession or other act Lessor under default shall relieve Lessee from any of its obligations hereunder unless Lessor releases it in writing. In addition to all other charges hereunder, Lessee shall pay to Lessor on demand all fees, costs and expenses incurred by Lessor as a result of such default, including without limitation, reasonable attorneys', appraisers', and brokers' fees and expenses and costs of removal, storage, transportation, insurance and disposition of the Equipment (except to the extent deducted as aforesaid) and of enforcement of any of Lessor's rights pursuant to any of the instruments given as security hereto as set forth in any Schedule. In the event that any court of competent jurisdiction determines that any provision of this Paragraph 17 is invalid or unenforceable in whole or in part such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Lease in any action or proceeding in which Lessor seeks to recover such damages. TO THE EXTENT PERMITTED BY LAW, LESSEE HEREBY WAIVES TRIAL BY JURY AND ANY RIGHT OF SET-OFF OR COUNTERCLAIM IN ANY ACTION BETWEEN LESSOR AND LESSEE. The remedies provided herein in favor of Lessor shall be exclusive, but shall be cumulative and in addition to all other remedies at law or in equity, any one or more of which may be exercised simultaneously or successively. The remedies contained herein expressly include, without limitation, the right of Lessor to recover payment of Lessee's obligations hereunder as of the date of default.

18. LATE CHARGES COLLECTION FEES AND ATTORNEYS' FEES. If any part of any sum owed to Lessor is not received by Lessor when due, then Lessee agrees to pay Lessor (a) a late charge of 15% of the delinquent Lease Rental Payment; (b) an interest charge of 1.5% of the amount outstanding per month for every month after the first month which the sum remains unpaid; (c) a returned check for non-sufficient funds charge of $50 or actual bank charges whichever are greater. No interest charged under the Lease or

Lessor shall be permitted. In all events Lessee agrees to pay Lessor's reasonable attorneys' fees as damages and costs in all proceedings instituted by Lessor to interpret and enforce the terms of this Lease.

19. INDEMNITY. Lessee does hereby assume liability for and does agree to indemnify, protect, save and keep harmless Lessor and Lessor's Assignee from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements, including court costs and legal expenses, of any kind and nature, imposed on, incurred by or asserted against Lessor (whether or not also indemnified against by any other person) in any way relating to or arising out of this Lease or the manufacture, purchase, ownership, delivery, rental, possession, use, operation, condition, return or other disposition of the Equipment by Lessor or Lessee, including without limitation, any claim alleging latent or other defects, whether or not discoverable by Lessor or Lessee, any claim for patent, trademark or copyright infringement and claims arising out of strict liability in tort; and any taxes for which Lessee is responsible pursuant to this Lease.

20. ASSIGNMENT. WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, LESSEE SHALL NOT ASSIGN, TRANSFER, PLEDGE OR HYPOTHECATE THIS LEASE, ANY EQUIPMENT OR ANY INTEREST IN THIS LEASE; OR IN AND TO THE EQUIPMENT OR PERMIT ITS RIGHTS UNDER THIS LEASE TO BE SUBJECT TO ANY LIEN, CHARGE OR ENCUMBRANCE OF ANY NATURE. LESSEE'S INTEREST HEREIN IS NOT ASSIGNABLE AND SHALL NOT BE ASSIGNED OR TRANSFERRED BY OPERATION OF LAW. Lessor shall have the right to assign this Lease, its interest in any Equipment or any part thereof or any interest therein or proceeds due it pursuant to an end option or agreement, if any. Lessee agrees to execute such instruments and documents and take such other actions as Lessor may request to carry out the purpose and intent of this Section 20. If Lessor assigns the rents reserved herein or all or any of the Lessor's other rights or interests hereunder, or amounts equal thereto, the right of the assignee to receive the rents or all any other rights of the assignee shall not be subject to any defense, set-off, counterclaim or recoupment which may arise out of any breach or obligation of Lessor or by reason of any other indebtedness or liability at any time owing by Lessor to Lessee. All rentals due hereunder shall be payable to Assignee by Lessee whether or not this Lease is terminated by operation of law or otherwise including without limitation, termination arising out of bankruptcy, reorganization or similar proceedings involving Lessee. Upon receipt of notification of such assignment, Lessee, subject to its rights hereunder, shall become the pledgeholder of the Equipment for and on behalf of the assignee and will relinquish possession thereof only to the assignee or pursuant to its written order. Lessee, on receiving notice of any such assignment, shall strictly hereby and make payments as may therein be directed. Following such assignment, the term "Lessor" shall be deemed to include or refer to Lessor's assignee, provided that no such assignee shall be deemed to assume any obligation or duty imposed upon Lessor hereunder and Lessee shall look only to Lessor for performance thereof. All rights and remedies of Lessor hereunder shall accrue to and be enforceable by any assignee of Lessor in its own name. Lessee acknowledges and confirms that in the event of an assignment, said assignment will not materially increase Lessee's risks or burdens pursuant to UCC2A-303(3).

21. DEPRECIATION INDEMNITY. (PARAGRAPH 21 DOES NOT APPLY IF LESSOR HAS AGREED IN WRITING TO PASS THE DEPRECIATION DEDUCTIONS TO LESSEE). If, as to any Equipment, under any circumstances and for any reason whatsoever, except through the fault of the Lessor, the Lessor transfers the Equipment (on Lessor's financial statement transfers its right to claim depreciation) shall lose or shall not have the right to claim, or there shall be disallowed or recaptured (collectively a "Loss") any portion of the claimed depreciation deductions for such Equipment, based on the cost thereof, Lessee agrees to pay Lessor upon demand an amount which, in the reasonable opinion of the Lessor, will cause Lessor-or Lessor upon demand an amount which, in the reasonable opinion of the Lessor, will cause Lessor-or Lessor's assignee, after tax not paid in respect of such payment is equal the net yield that Lessor or its transferee would have received, if Lessor or its transferee had not suffered such loss.

22. LESSOR'S RIGHT TO TERMINATE. Without limiting the right of Lessor to terminate any Schedule in the event of a default by Lessee, Lessor, at its sole election, shall at any time prior to acceptance of any Equipment have the right to terminate this Lease with respect to such Equipment if (a) there shall occur a material adverse change in Lessee's or any Guarantor's financial position or credit standing, or (b) any condition of Lessor's obligation to lease such Equipment set forth herein or in any other agreement between Lessor and Lessee shall not be fulfilled within the time specified, or (c) if at any time prior to delivery of the Equipment more than 60 days shall elapse between the date of execution of the Lease or Schedule describing such Equipment and the date of delivery of the Equipment to Lessee and if during such period there shall be a general increase in the prevailing cost of borrowed money; provided, however, that Lessor shall not have the right to terminate this Lease with respect to such Equipment unless Lessor shall have to amend this Lease and any other documents securing this Lease to provide for any increase in rental satisfactory to Lessor which takes into account in rental or rate factor said increase in the prevailing cost of borrowed money. Upon any termination by Lessor pursuant to this Paragraph, Lessee shall forthwith reimburse Lessor for sums paid by Lessor with respect to such Equipment and pay Lessor all other sums then due hereunder; whereupon if Lessee is not in default and shall have then fully performed all of its obligations hereunder, Lessor will, upon request of Lessee transfer to Lessee without warranty or recourse any rights that Lessor may then have with respect to such Equipment.

23. LESSEE'S WARRANTIES. Lessee warrants to Lessor that: (a) if Lessee is a corporation or partnership, Lessee is and shall at all times hereafter be duly organized and existing in good standing under the laws of the State of its incorporation or organization and has duly authorized the execution and performance of this Lease; (b) this Lease has been duly and validly executed and delivered by Lessee and constitutes a valid, legal and binding obligation of Lessee, enforceable in accordance with its terms; (c) the execution and performance of this Lease by Lessee will not violate any law or other governmental requirement or, if Lessee is a corporation, Lessee's corporate charter or by-laws; nor will it constitute a default under any agreement to which Lessee is now or hereafter a party; (d) all financial statements and information which have been or may hereafter be submitted to Lessor relating to Lessee or any Guarantor have been and will be prepared in accordance with generally accepted accounting principles; (e) there has been no material adverse change in the financial condition of Lessee or the Guarantor since the last submission of such financial information to Lessor; and (f) the Equipment is being leased by Lessee solely for business or commercial purposes. Lessee agrees to deliver to Lessor at any time or times hereafter such documents including, without limitation, and certified resolutions, as Lessor may reasonably request to demonstrate Lessee's compliance with the foregoing. Each of the above warranties shall be continuing and shall be deemed remade concurrently with the execution by Lessee of each Schedule, if any.

24. SURVIVAL. Lessee's indemnities (including, without limitation, under paragraphs 19 and 21 hereof), representations, and warranties shall survive the expiration or other termination of this Lease.

25. CHOICE OF LAW. This Lease, except for local filing requirements, shall be governed by Illinois law and shall be deemed to have been made in Morton Grove, Illinois. Lessee does hereby submit to the jurisdiction of any courts (Federal, State or local) which have situs within the State of Illinois with respect to any dispute, claim or suit arising out of or relating to this Lease or Lessee's obligations hereunder. In the event this Lease or any portion thereof is assigned by Lessor, at the option of such assignee, this Lease shall be governed by the laws of the state where assignee maintains its principal place of business.

26. ARTICLE 2A. Lessor and Lessee agree that if Article 2A - Leases of the Uniform Commercial Code ("Code") governs the terms of this Lease, then this Lease will be deemed a "finance lease". By accepting this Lease, Lessee acknowledges that (a) Lessor has advised Lessee of (i) the identity of the Supplier of the Equipment; (ii) that Lessee may have rights under the "supply contract" as defined in the Code, pursuant to which Lessor is purchasing the Equipment, and (iii) that Lessee may contact the Supplier for a description of any such rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY THE CODE, INCLUDING SECTIONS 2A-508 THROUGH 522 THEREOF. To the extent that any provisions of this Lease are inconsistent with the provisions of Article 2A of the Uniform Commercial Code the parties agree that, to the extent permitted by such Article 2A, the terms of this Lease shall control.

27. DEFINITIONS. For purposes of this Lease:
a) LEASE COMMENCEMENT DATE means the date Lessee accepts the Equipment as evidenced by Lessee executing a Certificate of Acceptance.
b) LESSOR'S CAPITALIZED COST means the sum of the purchase price of the Equipment, sales and/or use tax if applicable, installation costs, delivery costs, and the buy-out of a prior lease if applicable.
c) MONTHLY LEASE FACTOR means the monthly Lease Rental Payment divided by the Lessor's Capitalized Cost.

THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ABOVE WHICH ARE MADE A PART HEREOF AND WHICH LESSEE ACKNOWLEDGES IT HAS READ AND FULLY UNDERSTANDS. IN WITNESS WHEREOF

Lessee has executed this Lease as of this 31st day of December, 2003.

The party below executes this Lease as Lessee hereunder:

LESSEE:    VIDEOLOCITY INTERNATIONAL, INC.

Authorized Signature X: _____  President
                         Name: Robert E. Holt    Title: President

Accepted at Morton Grove, Illinois this 31st day of December, 2003

LESSOR:    IFC CREDIT CORPORATION

Authorized Signature X: _____
                                             Name:

Stephen S. Csar
Vice President



# GUARANTY

RE: Master Lease Agreement No. 801026 dated the 31ˢᵗ day of December, 2003 (as amended, modified or supplemented from time to time, the "Lease")
between IFC Credit Corporation ("Lessor") and
Videolocity International, Inc. ("Lessee")

In order to induce Lessor to enter into the Lease with Lessee and for Lessor to enter into such additional lease transaction(s) with Lessee as Lessor, in its sole discretion, may now or from time to time hereinafter deem advisable, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned (hereinafter called "Guarantor", who, if two or more in number, shall be jointly and severally bound hereby) guarantees absolutely, continually, unconditionally and without limitation to Lessor, its successors and assigns, the full, prompt and unconditional payment when due whether upon the due date or earlier by reason of acceleration or otherwise, and at all times thereafter, of all the indebtedness, liabilities and obligations (including, without limitation, any and all indemnification obligations) of Lessee to Lessor, its successors and assigns, hereafter existing, due or to become due, under the Lease, or any other lease or lease schedule now or hereafter made between Lessor and Lessee (including any and all existing leases and lease schedules made between Lessor and Lessee before the date hereof) (collectively, the "Liabilities").

Guarantor expressly agrees that the validity of this Guaranty and the enforceability of the obligations of Guarantor hereunder shall in no way be terminated, affected, or impaired by reason of the granting by Lessor of any indulgence to Lessee with respect to the Liabilities or by reason of the assertion by Lessor against Lessee of any of the rights or remedies reserved to Lessor pursuant to the provisions of the Lease or any lease schedule thereunder, by operation of law or otherwise, Guarantor hereby waiving all suretyship defenses, and any circumstance whatsoever which might constitute a legal or equitable discharge or defense of Guarantor. Guarantor authorizes Lessor, from time to time, to change any of the terms, conditions, covenants or provisions of any instrument evidencing the Liabilities and/or to amend, modify, extend, change or supplement any instrument evidencing the Liabilities. Guarantor covenants and agrees that this Guaranty shall remain and continue in full force and effect as to any amendment, renewal, modification, or extension of the Liabilities.

Guarantor further agrees to pay all costs and expenses including, without limitation, court costs and attorneys' and paralegal fees and expenses, paid or incurred by Lessor in endeavoring to collect the Liabilities in whole or in part and in enforcing this Guaranty.

Guarantor further agrees that its obligations under this Guaranty shall be primary and that Lessor may at its option proceed against Guarantor and Lessee, jointly and severally, or against Guarantor, individually, without having commenced any action against or having obtained any judgements against Lessee or any other person primarily or secondarily liable on the Liabilities. Further, Guarantor waives notice of, and does hereby consent to the release or any other application of any collateral security to the Liabilities by Lessor.

The failure of Lessor to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions, or covenants of this Guaranty or the Liabilities or to exercise any right herein or therein contained shall not be construed or deemed to be a waiver or relinquishment for the future of such term, provision, covenant or right. No subletting, assignment, or other transfer of any Liability, or any interest therein, whether or not with Lessor's consent, shall operate to extinguish or diminish the liability of Guarantor under this Guaranty.

Guarantor waives notice of acceptance of this Guaranty, and further waives protest, presentment, demand for payment, demand for performance, notice of default or non-payment under the Liabilities, notice of dishonor, and any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any claim which Guarantor may now or hereafter have against Lessee or any other person directly or contingently liable for the Liabilities, or against or with respect to Lessee's property (including, without limitation, property collateralizing Lessee's obligations to Lessor) arising from the existence or performance of this Guaranty. Whenever possible, each provision of this Guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provisions of this Guaranty shall be invalid under such law, such provisions shall be ineffective to the extent of such prohibition or invalidity and shall not invalidate the remainder of such provision or remaining provisions of this Guaranty.

_____ Initials

1

Corporate Guaranty
1-02


EXHIBIT
B

This Guaranty shall be binding upon Guarantor and upon the successors, assigns, ____rs and other legal representatives of Guarantor and shall inure to the benefit of Lessor's successors and assigns; all references herein to Lessee and to Guarantor shall be deemed to include their successors, assigns, heirs and other legal representatives, as applicable. Nothing in this Guaranty shall be construed to permit Guarantor to delegate its duties under this Guaranty to any other person or entity. Lessee's successors and assigns shall include, without limitation, any receiver, trustee or debtor in possession of or for Lessee. All references to the singular shall be deemed to include the plural where the context so requires.

This Guaranty has been executed, delivered and accepted at and shall be deemed to have been made at Morton Grove, Illinois, and shall be interpreted and the rights and liabilities of the parties hereto determined, in accordance with the internal laws of the State of Illinois, and Guarantor submits to the exclusive jurisdiction of any state or federal court having situs within Cook County, Illinois and waives personal service of any and all process upon Guarantor, and agrees that all such service of process shall be deemed given upon the earlier of (a) when received or (b) three days after mailing by certified or registered mail or (c) one day after being sent by reputable overnight courier to Guarantor at the address indicated below. Guarantor may change his/their address for purposes of the preceding sentence by prior written notice to Lessor at 8700 N. Waukegan Road, Suite 100, Morton Grove, IL 60053. Guarantor waives trial by jury, any objection based on forum non conveniens, and any objection to venue of any action instituted hereunder and consents to such legal or equitable relief as is deemed appropriate by the court.

Guarantor agrees that, in the event of the death, incompetency, dissolution or insolvency of Lessee or Guarantor, or the inability of Lessee or Guarantor to pay debts as they mature, or an assignment by Lessee or Guarantor for the benefit of creditors, or the institution of any proceeding by or against Lessee or Guarantor alleging that Lessee or Guarantor is insolvent or unable to pay debts as they mature, and if such event shall occur at a time when any of the Liabilities may not then be due and payable, Guarantor will pay to Lessor forthwith the full amount which would be payable hereunder by Guarantor if all of the Liabilities were then due and payable.

Guarantor further agrees that, if at any time all or any part of any payment theretofore applied by Lessor to any of the Liabilities is or must be rescinded or returned by Lessor for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of Lessee), such Liabilities shall, for the purposes of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by Lessor, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such Liabilities, all as though such application by Lessor had not been made.

This Guaranty may not be modified orally, but only by a written instrument signed by both Guarantor and Lessor.

Each individual signing hereinbelow on behalf of Guarantor represents and warrants that s/he has the right, power and authority to sign on behalf of Guarantor; that Guarantor if a corporation has duly authorized the execution of this Guaranty, and that this Guaranty is enforceable against Guarantor in accordance with its terms.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed 31st day of December, 2003.

CORPORATE GUARANTOR:

MISSION OF NEVADA, INC.

**Corporate Seal**

_____
Authorized Signature

Andrew Zimmerman
Name

Treasurer
Title

Address:   1 W. Mayflower Avenue
                North Las Vegas, NV 89030

2

## CORPORATE RESOLUTION FOR CORPORATE GUARANTY

The undersigned hereby certifies that the following resolution was duly adopted by the Board of Directors of Mission of Nevada, Inc., a corporation existing under the laws of Nevada, at a meeting duly held on ___31 st___ _December_, 2003, and that the same has not been modified or rescinded and is not in violation of the charter, by-laws, or any agreement of said corporation:

"Resolved that to induce IFC Credit Corporation ("Lessor"), at its discretion, to make leases or loans or otherwise extend credit to or deal with Videolocity International, Inc. ("Lessee") on such terms, in such amounts and at such times as may be approved by Lessor, without notice to or approval from this corporation, which will be incidental to and in furtherance of the business of this corporation and to its direct benefit and advantage, this corporation guarantees to Lessor, its successors and assigns, that said Lessee will promptly and fully pay all sums and perform all obligations to be paid or performed by it in connection with any such lease, loan, credit, or other transaction, and any officer of this corporation is authorized, in its name and on its behalf, to execute and deliver to Lessor a guaranty in such form and containing such provisions as may be acceptable to Lessor."

The undersigned further certifies that the officers of said corporation and respective offices held by them are:

| | | |
|---|---|---|
| D.W. Doc Wiener | President | |
| Name of President | | Signature |
| | Vice President | |
| Name of Vice President | | Signature |
| Andrew Zimmerman | Treasurer | |
| Name of Treasurer | | Signature |
| David T. Spurlock, Jr., Esq. | Secretary | |
| Name of Secretary | | Signature |

Signed and sealed this 31st day of December, 2003.

Corporate Seal

Secretary

Corporate Guaranty Resolution
1-02

LEASE SCHEDULE NO. 001
to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Videolocity International, Inc. ("Lessee")

**EQUIPMENT:**        SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.

**EQUIPMENT LOCATION:**      SEE EXHIBIT A ATTACHED HERETO AND MADE A PART
**HEREOF.**

**LEASE COMMENCEMENT DATE:**     The term of this Lease Schedule shall begin on the date Lessee executes an Irrefutable Delivery and Acceptance (the "Lease Commencement Date") and shall continue for a period of forty-eight (48) months beginning on December 31, 2003 (the "Initial Term Start Date").

**INITIAL TERM:**        48 months

**LEASE RENTAL PAYMENT:**     Lessee shall pay as monthly rental during the Initial Term $6,767.00 plus applicable taxes, which amount shall be due and payable in arrears on the first day of each month during the Initial Term. Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice.

**ADVANCE PAYMENT:**      Lessee shall pay $13,534.00 plus applicable taxes, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the First and Last Lease Rental Payment(s).

**EQUIPMENT DISCLAIMER AND AGREEMENT:**     Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us. We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, ITS **MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.**

**LESSEE'S ACKNOWLEDGEMENT:**     Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows:
(a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or otherwise, so assigned shall be absolutely unconditional and shall be payable whether

_____Initials

1



EXHIBIT
C

or not the Lease are terminated by operation of law, any act of the parties, or otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon. All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 31st day of December, 2003.

LESSOR:

IFC CREDIT CORPORATION

[signature]

Authorized Signer

Stephen S. Csar
Vice President

LESSEE:

VIDEOLOCITY INTERNATIONAL, INC.

[signature]

Authorized Signature

Robert E. Holt
Name

President
Title

Counterpart No. 1 of this Lease Schedule is the only Original. All other counterparts are duplicate originals. A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1. Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

RH

**Exhibit A to Lease Schedule No. or**

to Master Lease Agreement No. 801026 dated December 31, ...3 (the "Lease")
between IFC Credit Corporation ("Lessor") and
Videolocity International, Inc. ("Lessee")

| Quantity | Make, Model, and Serial No. | Description |
| --- | --- | --- |

2  CATALYST 3750 24 10/100/1000T + 4 SFP ENHANCED MULTILAYER; 2 CISCO STACKWISE 50CM STACKING CABLE; 2 POWER CORD, 110V
2  SMARTNET 8X5XNBD CAT 3750 24 ENHANCED MULTILAYER
32  24-PORT 2950-BASED LONG REACH ETHERNET SWITCH; POWER CORD, 110V
32  SMARTNET 8X5XNBD 24-PORT 2950 BSD LONG REACH ETHER SWITCH
32  LONG REACH ETHERNET FOUR PORT CPE-24 PACK; AC POWER SUPPLY CISCO 585-NORTH AMERICA
16  POTS SPLITTER, 1MHZ, 48 PORT

**Supplier(s):**  IBM
**Equipment Location(s):** 1762-A Prospector Avenue, Park City, UT, 84060

**LESSOR:**
IFC Credit Corporation
_____
Authorized Signature

Stephen S. Csar
Vice President

**LESSEE:**
Videolocity International, Inc.
_____
Authorized Signature
Robert E. Holt
Name
President
Title

## FIRST AMENDMENT TO LEASE SCHEDULE NO. 001

**This First Amendment** is made on this 31st day of December, 2003 to that certain Master Lease Agreement No. 801026 dated December 31, 2003 (the "<u>Agreement</u>") as it pertains to Lease Schedule No. 001 dated December 31, 2003 (the "<u>Lease Schedule</u>") between the undersigned parties.

**Whereas**, the parties hereto desire to amend certain of the terms of the Lease Schedule as hereinafter provided:

**Now Therefore**, in consideration of the premises and the mutual obligations hereinafter contained, and for other good and valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1.  So long as no Event of Default shall have occurred and be continuing and the Lease Schedule has not been earlier terminated, Lessee, upon giving Purchase Notice to Lessor, may purchase all, but not less than all, of the Equipment subject to said Lease Schedule at the expiration of the Initial Term or any Renewal Term on an "as is," "where is" basis for cash equal to (a) the greater of (i) the Fair Market Value of the Equipment (hereinafter defined) as of the end of the Initial Term, or (ii) $26,675.00, plus (b) all applicable sales, use, property or excise taxes on or measured by such sale and any other expenses of transfer (collectively, the "<u>Purchase Price</u>"). Lessee's payment to Lessor of the Purchase Price as determined above shall be due Lessor no later than the expiration date of the Initial Term or any Renewal Term, or Lessee shall be deemed to have waived its option to purchase the Equipment.

2.  Once the Lessor has been given a Termination Notice, then the term of the Lease Schedule applicable to the Equipment shall automatically and without further action on the part of Lessor or Lessee be extended for an additional consecutive term of twelve (12) months (the "<u>Extended Term</u>") at a monthly rental equal to $6,602.00 (the "<u>Extended Term Rental</u>"), with each Extended Term Rental being due and payable on the first day of each month of the Extended Term.

3.  For purposes of the Agreement, "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell, provided, however, that in such determination: (a) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Agreement; (b) in the case of any installed Equipment, such Equipment shall be valued on an installed basis; and (c) costs of removal from its current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value within fifteen days after Lessee has given Purchase Notice to Lessor, then Lessor shall appoint an independent appraiser to determine Fair Market Value, and such appraisal value shall be final, binding and conclusive in determining the Fair Market Value of the Equipment. Lessee shall bear all costs associated with any such appraisal. Lessee shall be deemed to have waived its option to purchase the Equipment unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen days after Fair Market Value is determined (by agreement or appraisal).

4.   All capitalized terms not defined herein shall have the meanings set forth in the Agreement.  The Agreement and the Lease Schedule, as amended hereby, shall remain in full force and effect, and are in all respects hereby ratified and affirmed.  In the event of any conflict between the Agreement, the Lease Schedule, and this First Amendment to Lease Schedule, the First Amendment to Lease Schedule shall govern.  The notices to Lessor relative to Lessee's exercise of any purchase option should be sent via certified mail to: IFC Credit Corporation, 8700 North Waukegan Road, Suite 100, Morton Grove, IL  60053, Attention: Manager, Lease Terminations.

**In Witness Whereof,** the parties hereto have caused this amendment to be executed by their duly authorized officers as of the day and year first above written.

LESSOR:                                                   LESSEE:

IFC CREDIT CORPORATION                    VIDEOLOCITY INTERNATIONAL, INC.

By: _____

_____          (Authorized Signature)
Authorized Signer

                                                              Robert E. Holt
                                                              Name

                                                              President
                                                              Title

## IRREFUTABLE DELIVERY & ACCEPTANCE

LESSEE:    **Videolocity International, Inc.**
**358 South 700 East, Suite B604**
**Salt Lake City, UT 84102**

RE:    Lease Schedule No. 001 to Master Lease Agreement No. 801026 between IFC Credit Corporation (as "Lessor") and Videolocity International, Inc. (as "Lessee")

It is understood by and among the parties that monies advanced by LESSOR to any supplier, vendor or manufacturer for, but not limited to equipment, software, service contracts, training, shipping, handling, and installation expenses pursuant to the above referenced Equipment Lease ("LEASE") shall be deemed to validate and cause to become effective the said LEASE at the time the monies are forwarded to the LESSEE or any supplier, vendor or manufacturer. It is further understood among the parties that any advanced monies are the result of a specific request by the LESSEE and that the LESSEE shall remain fully responsible under all the terms and conditions of said LEASE, irrespective of any other parties performance, action, or lack thereof including but not limited to the functionality of equipment, computer software, equipment service or training, or the ability of any supplier, vendor or manufacturer to make available such equipment at any specific time. **LESSEE HEREBY CERTIFIES** that all items of equipment described in the LEASE are in good order and condition and are acceptable to the LESSEE **AS IS, WHERE IS**.

**LESSEE:**

**Videolocity International, Inc.**

By: _____

Name: Robert E. Holt

Title: President

DATED:    December 31, 2003



**CREDIT CORPORATION**

### NOTICE OF DEFAULT AND ACCELERATION
#### May 9, 2008
## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mission of Nevada, Inc. (Corporate Guarantor)
Attn: Andrew Zimmerman
1 W. Mayflower Avenue
North Las Vegas, NV. 89030

RE:    801026-001    Fax: (702) 399-3976

Dear Sir or Madam:

**Notwithstanding IFC Credit Corporation's efforts to resolve the delinquent status of your account, we now find no alternative but to** accelerate the subject Lease Agreement, a copy of which is enclosed, and make demand upon you for full performance **pursuant to the terms and conditions set forth under said Agreement.**

**Be hereby advised that events of default, in accordance with the terms of the subject Agreement, have occurred, and continue as of this date. As a result of such events of default:**

1.    We HEREBY declare the entire amount under the Agreement immediately due and payable.

2.    We HEREBY MAKE DEMAND upon you for immediate payment of all amounts due under said Agreement, as set forth below, in the amount of $242,149.20.

3.    NOTICE is given to you that we intend to assert all available rights and remedies under the Agreement, including and without limitation the right to recover attorney's fees and costs incurred in connection with Lessee's default; the right to recover from Lessee all reasonable expenses incurred in retaking, holding and preparing the equipment for sale of other disposition; and the right to recover all amounts due and owing to us:






**CREDIT CORPORATION**

Page two
Lease No.  801026-001

| | |
|---|---|
| Renewals Due | $84,967.00 |
| Late Charges Due | $46,662.00 |
| Previous Sales Tax Due | $9,705.20 |
| Purchase Option (includes 7.25% sales tax) | $100,815.00 |
| **BALANCE DUE IFC Credit** (Subject to final Audit upon Payment) | =$242,149.20 |

If receipt of certified funds in the amount of $242,149.20, and return of the subject equipment, has not occurred by 5/15/08, Lessee is advised that we will have no alternative but to immediately enforce our legal rights and remedies under said Agreement to enforce compliance therewith. Receipt of any monies less than the entire amount demanded herein will not alter our rights or intention under the terms of the subject Agreement.  Any such sums received will be deposited and applied against the sums due, but no such act shall cure any default declared herein or affect acceleration of all sums due as set forth herein.

Sincerely,

Robert Polonsky
Asset Manager
IFC Credit Corporation

encl.
cc:    Regular Mail



MEMBER
ELA
Equipment
Leasing
Association
of America

8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702


MEMBER
UAEL

LEASE SCHEDULE NO. 002
to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Videolocity International, Inc. ("Lessee")

| | |
|---|---|
| **EQUIPMENT:** | SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF. |
| **EQUIPMENT LOCATION: HEREOF.** | SEE EXHIBIT A ATTACHED HERETO AND MADE A PART |
| **LEASE COMMENCEMENT DATE:** | The term of this Lease Schedule shall begin on the date Lessee executes an Irrefutable Delivery and Acceptance (the "Lease Commencement Date") and shall continue for a period of forty-eight (48) months beginning on December 31, 2003 (the "Initial Term Start Date"). |
| **INITIAL TERM:** | 48 months |
| **LEASE RENTAL PAYMENT:** | Lessee shall pay as monthly rental during the Initial Term $4,498.00 plus applicable taxes, which amount shall be due and payable in arrears on the first day of each month during the Initial Term. Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice. |
| **ADVANCE PAYMENT:** | Lessee shall pay $8,996.00 plus applicable taxes, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the First and Last Lease Rental Payment(s). |
| **EQUIPMENT DISCLAIMER AND AGREEMENT:** | Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us. We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, **ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.** |
| **LESSEE'S ACKNOWLEDGEMENT:** | Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows: (a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or otherwise, so assigned shall be absolutely unconditional and shall be payable whether |

_R H_ Initials

1

EXHIBIT
D

or not the Lease are terminated by operation of law, any act of the parties, or otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon. All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 31st day of December, 2003.

LESSOR:                                              LESSEE:

IFC CREDIT CORPORATION                              VIDEOLOCITY INTERNATIONAL, INC.

_____                    _____
Authorized Signer                                   Authorized Signature

        Stephen S. Csar                             Robert E. Holt_____
        Vice President                              Name

                                                    President_____
                                                    Title

Counterpart No. 1 of this Lease Schedule is the only Original. All other counterparts are duplicate originals. A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1. Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

Version 2.0- 6/02
Equipment Schedule

**Exhibit A to Lease Schedule No. (**

to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")

between IFC Credit Corporation ("Lessor") and

Videolocity International, Inc. ("Lessee")

| Quantity Make, Model, and Serial No.  Description |
|---|

**Supplier(s): IBM**

4 X345 INTEL XEON 3.06GHZ 512KB
4 INTEL XEON 3.06GHZ
8 256MB DDR PC2100 ECC DIMM
20 36.4GB 15K U320 SCSI HS HDD
4 X345 514W HS REDUNDANT
4 SVC PAC SERVER
1 FAST T FC 193 HOST, BUS ADAPTER
4 SERVRAID 61 ADAPTER
2 X335 INTEL XEON 2.4GHZ PROC.
4 36.4GB 15K U320 SCSI HS HDD
4 256MB DDR PC2100 ECC DIMM

**Supplier(s): Provantage Corporation**

2 VX BASE ENCLOSURE 42UX600X1070MM
2 RACK AIR REMOVAL UNIT -115V
3 SMART-UPS 5000 RM 5U T 200V
5 120V VERTICAL POWER DISTRIBUTION UNIT TACK L520 14X515 OUTLETS
2 OMNIVIEW ECONOMY SERIES 4-PORT KVM SWITCH PS/2
8 OMNIVIEW KVM PS/2 CABLE 6-FT.
2 REAR CABLE MANAGEMENT TRAY 42U
3 NETSHELTER VX ROOF 42U/47LX600X1070MM
1 VX BASE ENCLOSURE 42UX600X1070MM
2 17IN KEYBOARD DRAWER
2 VLS10 15IN CRT MONITOR

**Equipment Location(s):** 1762-A Prospector Avenue, Park City, , UT, 84060

| **LESSOR:** | **LESSEE:** |
|---|---|
| IFC Credit Corporation | Videolocity International, Inc. |
| Authorized Signature | Authorized Signature |
| | Robert E. Holt |
| | Name |
| Stephen S. Csar | President |
| Vice President | Title |

**FIRST AMENDMENT TO LEASE SCHEDULE NO. 002**

**This First Amendment** is made on this 31st day of December, 2003 to that certain Master Lease Agreement No. 801026 dated December 31, 2003 (the "Agreement") as it pertains to Lease Schedule No. 002 dated December 31, 2003 (the "Lease Schedule") between the undersigned parties.

**Whereas,** the parties hereto desire to amend certain of the terms of the Lease Schedule as hereinafter provided:

**Now Therefore,** in consideration of the premises and the mutual obligations hereinafter contained, and for other good and valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1. So long as no Event of Default shall have occurred and be continuing and the Lease Schedule has not been earlier terminated, Lessee, upon giving Purchase Notice to Lessor, may purchase all, but not less than all, of the Equipment subject to said Lease Schedule at the expiration of the Initial Term or any Renewal Term on an "as is," "where is" basis for cash equal to (a) the greater of (i) the Fair Market Value of the Equipment (hereinafter defined) as of the end of the Initial Term, or (ii) $18,226.00, plus (b) all applicable sales, use, property or excise taxes on or measured by such sale and any other expenses of transfer (collectively, the "Purchase Price"). Lessee's payment to Lessor of the Purchase Price as determined above shall be due Lessor no later than the expiration date of the Initial Term or any Renewal Term, or Lessee shall be deemed to have waived its option to purchase the Equipment.

2. Once the Lessor has been given a Termination Notice, then the term of the Lease Schedule applicable to the Equipment shall automatically and without further action on the part of Lessor or Lessee be extended for an additional consecutive term of twelve (12) months (the "Extended Term") at a monthly rental equal to $4,511.00 (the "Extended Term Rental"), with each Extended Term Rental being due and payable on the first day of each month of the Extended Term.

3. For purposes of the Agreement, "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell, provided, however, that in such determination: (a) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Agreement; (b) in the case of any installed Equipment, such Equipment shall be valued on an installed basis; and (c) costs of removal from its current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value within fifteen days after Lessee has given Purchase Notice to Lessor, then Lessor shall appoint an independent appraiser to determine Fair Market Value, and such appraisal value shall be final, binding and conclusive in determining the Fair Market Value of the Equipment. Lessee shall bear all costs associated with any such appraisal. Lessee shall be deemed to have waived its option to purchase the Equipment unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen days after Fair Market Value is determined (by agreement or appraisal).

4.     All capitalized terms not defined herein shall have the meanings set ...th in the Agreement. The Agreement and the Lease Schedule, as amended hereby, shall remain in full force and effect, and are in all respects hereby ratified and affirmed. In the event of any conflict between the Agreement, the Lease Schedule, and this First Amendment to Lease Schedule, the First Amendment to Lease Schedule shall govern. The notices to Lessor relative to Lessee's exercise of any purchase option should be sent via certified mail to: IFC Credit Corporation, 8700 North Waukegan Road, Suite 100, Morton Grove, IL 60053, Attention: Manager, Lease Terminations.

**In Witness Whereof,** the parties hereto have caused this amendment to be executed by their duly authorized officers as of the day and year first above written.

**LESSOR:**                                    **LESSEE:**

IFC CREDIT CORPORATION                         VIDEOLOCITY INTERNATIONAL, INC.

By: _____
                                                     Authorized Signature

_____
Authorized Signer                              Robert E. Holt_____
                                               Name

                                               President_____
                                               Title

## IRREFUTABLE DELIVERY & ACCEPTANCE

LESSEE:        **Videolocity International, Inc.**
               **358 South 700 East, Suite B604**
               **Salt Lake City, UT 84102**

RE:            Lease Schedule No. 002 to Master Lease Agreement No. 801026 between IFC Credit Corporation
               (as "Lessor") and Videolocity International, Inc. (as "Lessee")

It is understood by and among the parties that monies advanced by LESSOR to any supplier, vendor or manufacturer
for, but not limited to equipment, software, service contracts, training, shipping, handling, and installation expenses
pursuant to the above referenced Equipment Lease ("LEASE") shall be deemed to validate and cause to become
effective the said LEASE at the time the monies are forwarded to the LESSEE or any supplier, vendor or manufacturer.
It is further understood among the parties that any advanced monies are the result of a specific request by the LESSEE
and that the LESSEE shall remain fully responsible under all the terms and conditions of said LEASE, irrespective of
any other parties performance, action, or lack thereof including but not limited to the functionality of equipment,
computer software, equipment service or training, or the ability of any supplier, vendor or manufacturer to make
available such equipment at any specific time. **LESSEE HEREBY CERTIFIES** that all items of equipment described
in the LEASE are in good order and condition and are acceptable to the LESSEE **AS IS, WHERE IS.**

LESSEE:

**Videolocity International, Inc.**

By: _____

Name:  Robert E. Holt_____

Title:  President_____

DATED:        **December 31, 2003**



CREDIT CORPORATION

### NOTICE OF DEFAULT AND ACCELERATION
#### May 9, 2008
### CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mission of Nevada, Inc. (Corporate Guarantor)
Attn: Andrew Zimmerman
1 W. Mayflower Avenue
North Las Vegas, NV. 89030

**RE:    801026-002    Fax: (702) 399-3976**

**Dear Sir or Madam:**

**Notwithstanding IFC Credit Corporation's efforts to resolve the delinquent status of your account, we now find no alternative but to** accelerate the subject Lease Agreement, a copy of which is enclosed, and make demand upon you for full performance **pursuant to the terms and conditions set forth under said Agreement.**

**Be hereby advised that events of default, in accordance with the terms of the subject Agreement, have occurred, and continue as of this date. As a result of such events of default:**

1.   We HEREBY declare the entire amount under the Agreement immediately due and payable.

2.   We HEREBY MAKE DEMAND upon you for immediate payment of all amounts due under said Agreement, as set forth below, in the amount of $164,935.25.

3.   NOTICE is given to you that we intend to assert all available rights and remedies under the Agreement, including and without limitation the right to recover attorney's fees and costs incurred in connection with Lessee's default; the right to recover from Lessee all reasonable expenses incurred in retaking, holding and preparing the equipment for sale of other disposition; and the right to recover all amounts due and owing to us:





8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702



# IFC
## CREDIT CORPORATION

Page two
Lease No.  801026-002

| | |
|---|---|
| Renewals Due | =$58,057.00 |
| Late Charges Due | =$31,161.00 |
| Previous Sales Tax Due | =$6,541.00 |
| Purchase Option (includes 7.25% sales tax) | =$69,176.25 |
| **BALANCE DUE IFC Credit** **(Subject to final Audit upon Payment)** | =$164,935.25 |

**If receipt of certified funds in the amount of $164,935.25, and return of the subject equipment, has not occurred by 5/15/08, Lessee is advised that we will have no alternative but to immediately enforce our legal rights and remedies under said Agreement to enforce compliance therewith.** Receipt of any monies less than the entire amount demanded herein will not alter our rights or intention under the terms of the subject Agreement.  Any such sums received will be deposited and applied against the sums due, but no such act shall cure any default declared herein or affect acceleration of all sums due as set forth herein.

Sincerely,

Robert Polonsky
Asset Manager
IFC Credit Corporation

encl.
cc:    Regular Mail



MEMBER
ELA
Equipment
Leasing
Association
of America

8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702

MEMBER
UAEL


Counterpart No. 2

LEASE SCHEDULE NO. 003
to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Videolocity International, Inc. ("Lessee")

**EQUIPMENT:** (800) 1000MHz DES Box w/40W do-to-do, w/40W Adapter, including the VIA 1000MHz miniITX mainBoard, 128MB sytem memory, AC Cord including but not limited to all part, accessories, and attachments.

**EQUIPMENT LOCATION:** 1762-A Prospector Avenue Park City, UT 84060

**LEASE COMMENCEMENT DATE:** The term of this Lease Schedule shall begin on the date Lessee executes an Irrefutable Delivery and Acceptance (the "Lease Commencement Date") and shall continue for a period of forty-eight (48) months beginning on December 31, 2003 (the "Initial Term Start Date").

**INITIAL TERM:** 48 months

**LEASE RENTAL PAYMENT:** Lessee shall pay as monthly rental during the Initial Term $8,844.00 plus applicable taxes, which amount shall be due and payable in arrears on the first day of each month during the Initial Term. Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice.

**ADVANCE PAYMENT:** Lessee shall pay $17,688.00 plus applicable taxes, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the First and Last Lease Rental Payment(s).

**EQUIPMENT DISCLAIMER AND AGREEMENT:** Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us. We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, **ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.**

**LESSEE'S ACKNOWLEDGEMENT:** Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows:
(a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or

Initials

1

Version 2.1 – 6/02
Equipment Schedule



otherwise, so assigned shall be absolutely unconditional and shall be payable whether or not the Lease are terminated by operation of law, any act of the parties, or otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon. All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 31st day of December, 2003.

LESSOR:                                              LESSEE:

IFC CREDIT CORPORATION                    VIDEOLOCITY INTERNATIONAL, INC.

_____          _____
Authorized Signer                                   Authorized Signature

        Stephen S. Csar                         Robert E. Holt_____
        Vice President                           Name

                                                 President_____
                                                 Title

Counterpart No. 1 of this Lease Schedule is the only Original. All other counterparts are duplicate originals. A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1. Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

Version 2.0- 6/02
Equipment Schedule

**IWSsales, Inc.**
2693 Hocking Way, San Jose, CA 95124 - USA
TEL: 408-859-3896
FAX: 801-912-2160

INVOICE: IWS-VC021304-P1b
CUST: VC102502
REF: IPO-801026-003

## INVOICE - APRIL 19, 2004

| Bill To: | Ship To: Videolocity, Inc. |
|---|---|
| IFC Credit Corporation | C/O: CeCe Knapp |
| 8700 N. Waukegan Road, Suite 100 | Hotel San Remo Casino & Resort |
| Morton Grove, Il 60053 | 115 East Tropicana Avenue |
| | Las Vegas, Nevada 89109 |
| Tel.: 847-663-6509 | |
| FAX: 847-324-1683 | Tel.: 702-597-6006 |

| DATE | TRACKING | FOB | TERMS |
|---|---|---|---|
| 4/19/2004 | | SFO | FULL BALANCE 10Day B4 Ship |

| PO # | SHIP DATE | SALESPERSON | |
|---|---|---|---|
| PO-801026-003 | 30-Apr-04 | NU | |

| QUANTITY | | DESCRIPTION | $ UNIT | EXTENDED |
|---|---|---|---|---|
| REQUIRED | SHIP | | | |
| 800 | 800 | 1000 MHz DES BOX w/40W dc-to-dc, w/40W Adapter, | $319.14 | $255,312.00 |
| | | including the VIA 1000MHz miniITX mainBoard, | | |
| | | 128MB system memory, AC cord, final assy, test, | | |
| | | custom heat sink, and packaging material. FOB SFO-CA USA | | |
| | | | | |
| | | Less 50% TT-wire Received on 2/24/2004 | | $127,656.00 |

**PAYMENT TERMS:**

| Make Payments to: | IWSsales, Inc. |
|---|---|
| | 2693 Hocking Way, |
| | San Jose, CA 95124 |
| Wire Instructions: | Citibank, F.S.B., Camden Financial Center |
| | 3510 Leigh Ave, San Jose, CA 95124 |
| | **Account #:** 00200183663 |
| | **Bank Routing:** 321171184 |
| | **SWIFT Code:** CITIUS33 |
| | San Jose, CA 95124 |

| | |
|---|---|
| SUB TOTAL | $127,656.00 |
| SALES TAX | $0.00 |
| **TOTAL BALANCE DUE ON OR BEFORE APRIL 20, 2004** | **$127,656.00** |

FIRST AMENDMENT TO LEASE SCHEDULE NO. 003

**This First Amendment** is made on this 31st day of December, 2003 to that certain Master Lease Agreement No. 801026 dated December 31, 2003 (the "Agreement") as it pertains to Lease Schedule No. 003 dated December 31, 2003, (the "Lease Schedule") between the undersigned parties.

**Whereas,** the parties hereto desire to amend certain of the terms of the Lease Schedule as hereinafter provided:

**Now Therefore,** in consideration of the premises and the mutual obligations hereinafter contained, and for other good and valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1.  So long as no Event of Default shall have occurred and be continuing and the Lease Schedule has not been earlier terminated, Lessee, upon giving Purchase Notice to Lessor, may purchase all, but not less than all, of the Equipment subject to said Lease Schedule at the expiration of the Initial Term or any Renewal Term on an "as is," "where is" basis for cash equal to (a) the greater of (i) the Fair Market Value of the Equipment (hereinafter defined) as of the end of the Initial Term, or (ii) $35,731.00, plus (b) all applicable sales, use, property or excise taxes on or measured by such sale and any other expenses of transfer (collectively, the "Purchase Price"). Lessee's payment to Lessor of the Purchase Price as determined above shall be due Lessor no later than the expiration date of the Initial Term or any Renewal Term, or Lessee shall be deemed to have waived its option to purchase the Equipment.

2.  Once the Lessor has been given a Termination Notice, then the term of the Lease Schedule applicable to the Equipment shall automatically and without further action on the part of Lessor or Lessee be extended for an additional consecutive term of twelve (12) months (the "Extended Term") at a monthly rental equal to $8,844.00 (the "Extended Term Rental"), with each Extended Term Rental being due and payable on the first day of each month of the Extended Term.

3.  For purposes of the Agreement, "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell, provided, however, that in such determination: (a) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Agreement; (b) in the case of any installed Equipment, such Equipment shall be valued on an installed basis; and (c) costs of removal from its current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value within fifteen days after Lessee has given Purchase Notice to Lessor, then Lessor shall appoint an independent appraiser to determine Fair Market Value, and such appraisal value shall be final, binding and conclusive in determining the Fair Market Value of the Equipment. Lessee shall bear all costs associated with any such appraisal. Lessee shall be deemed to have waived its option to purchase the Equipment unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen days after Fair Market Value is determined (by agreement or appraisal).



4.    All capitalized terms not defined herein shall have the meaning set forth in the Agreement. The Agreement and the Lease Schedule, as amended hereby, shall remain in full force and effect, and are in all respects hereby ratified and affirmed. In the event of any conflict between the Agreement, the Lease Schedule, and this First Amendment to Lease Schedule, the First Amendment to Lease Schedule shall govern. The notices to Lessor relative to Lessee's exercise of any purchase option should be sent via certified mail to: IFC Credit Corporation, 8700 North Waukegan Road, Suite 100, Morton Grove, IL  60053, Attention: Manager, Lease Terminations.

**In Witness Whereof,** the parties hereto have caused this amendment to be executed by their duly authorized officers as of the day and year first above written.

**LESSOR:**

IFC CREDIT CORPORATION

Authorized Signer

Stephen S. Csar
Vice President

**LESSEE:**

VIDEOLOCITY INTERNATIONAL, INC.

By: _____
        Authorized Signature

Robert E. Holt
Name

President
Title

Version 3.0 – 8/03
First Amendment - LT

## IRREFUTABLE DELIVERY & ACCEPTANCE

LESSEE:               **Videolocity International, Inc.**
                      **358 South 700 East, Suite B604**
                      **Salt Lake City, UT 84102**

RE:        Lease Schedule No. 003 to Master Lease Agreement No. 801026 between IFC Credit Corporation
           (as "Lessor") and Videolocity International, Inc. (as "Lessee")

It is understood by and among the parties that monies advanced by LESSOR to any supplier, vendor or manufacturer
for, but not limited to equipment, software, service contracts, training, shipping, handling, and installation expenses
pursuant to the above referenced Equipment Lease ("LEASE") shall be deemed to validate and cause to become
effective the said LEASE at the time the monies are forwarded to the LESSEE or any supplier, vendor or manufacturer.
It is further understood among the parties that any advanced monies are the result of a specific request by the LESSEE
and that the LESSEE shall remain fully responsible under all the terms and conditions of said LEASE, irrespective of
any other parties performance, action, or lack thereof including but not limited to the functionality of equipment,
computer software, equipment service or training, or the ability of any supplier, vendor or manufacturer to make
available such equipment at any specific time. **LESSEE HEREBY CERTIFIES** that all items of equipment described
in the LEASE are in good order and condition and are acceptable to the LESSEE **AS IS, WHERE IS.**

LESSEE:

**Videolocity International, Inc.**

By: _____

Name: Robert E. Holt _____

Title: President _____

**DATED:**        December 31, 2003





CREDIT CORPORATION

## NOTICE OF DEFAULT AND ACCELERATION
### May 9, 2008
## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mission of Nevada, Inc. (Corporate Guarantor)
Attn: Andrew Zimmerman
1 W. Mayflower Avenue
North Las Vegas, NV. 89030

RE:    801026-003    Fax: (702) 399-3976

Dear Sir or Madam:

Notwithstanding IFC Credit Corporation's efforts to resolve the delinquent status of your account, we now find no alternative but to accelerate the subject Lease Agreement, a copy of which is enclosed, and make demand upon you for full performance pursuant to the terms and conditions set forth under said Agreement.

Be hereby advised that events of default, in accordance with the terms of the subject Agreement, have occurred, and continue as of this date. As a result of such events of default:

1.    We HEREBY declare the entire amount under the Agreement immediately due and payable.

2.    We HEREBY MAKE DEMAND upon you for immediate payment of all amounts due under said Agreement, as set forth below, in the amount of $322,376.25.

3.    NOTICE is given to you that we intend to assert all available rights and remedies under the Agreement, including and without limitation the right to recover attorney's fees and costs incurred in connection with Lessee's default; the right to recover from Lessee all reasonable expenses incurred in retaking, holding and preparing the equipment for sale of other disposition; and the right to recover all amounts due and owing to us:







## IFC
CREDIT CORPORATION

Page two
Lease No.   801026-003

| | |
|---|---|
| Renewals Due | =$113,981.00 |
| Late Charges Due | =$59,724.00 |
| Previous Sales Tax Due | =$13,000.00 |
| Purchase Option (includes 7.25% sales tax) | =$135,671.25 |
| BALANCE DUE IFC Credit (Subject to final Audit upon Payment) | =$322,376.25 |

If receipt of certified funds in the amount of $322,376.25, and return of the subject equipment, has not occurred by 5/15/08, Lessee is advised that we will have no alternative but to immediately enforce our legal rights and remedies under said Agreement to enforce compliance therewith. Receipt of any monies less than the entire amount demanded herein will not alter our rights or intention under the terms of the subject Agreement.  Any such sums received will be deposited and applied against the sums due, but no such act shall cure any default declared herein or affect acceleration of all sums due as set forth herein.

Sincerely,

Robert Polonsky
Asset Manager
IFC Credit Corporation

encl.
cc:     Regular Mail





8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702

Counterpart No. 2

LEASE SCHEDULE NO. 004
to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Videolocity International, Inc. ("Lessee")

| | |
|---|---|
| **EQUIPMENT:** | SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF. |
| **EQUIPMENT LOCATION:** | SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF. |
| **LEASE COMMENCEMENT DATE:** | The term of this Lease Schedule shall begin on the date Lessee executes an Irrefutable Delivery and Acceptance (the "Lease Commencement Date") and shall continue for a period of forty-eight (48) months beginning on December 31, 2003 (the "Initial Term Start Date"). |
| **INITIAL TERM:** | 48 months |
| **LEASE RENTAL PAYMENT:** | Lessee shall pay as monthly rental during the Initial Term $4,363.00 plus applicable taxes, which amount shall be due and payable in arrears on the first day of each month during the Initial Term. Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice. |
| **ADVANCE PAYMENT:** | Lessee shall pay $8,726.00 plus applicable taxes, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the First and Last Lease Rental Payment(s). |
| **EQUIPMENT DISCLAIMER AND AGREEMENT:** | Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us. We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, **ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.** |
| **LESSEE'S ACKNOWLEDGEMENT:** | Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows: (a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or otherwise, so assigned shall be absolutely unconditional and shall be payable whether |

_RH_ Initials

1

Version 2.1 – 6/02
Equipment Schedule



or not the Lease are terminated by operation of law, any act of the parties, or otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon. All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 31st day of December, 2003.

LESSOR:                                          LESSEE:

IFC CREDIT CORPORATION                 VIDEOLOCITY INTERNATIONAL, INC.


_____                 _____
Authorized Signer                                Authorized Signature

    Stephen S. Csar                           Robert E. Holt_____
    Vice President                            Name

                                              President_____
                                              Title


Counterpart No. 1 of this Lease Schedule is the only Original. All other counterparts are duplicate originals. A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1. Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

**Exhibit A to Lease Schedule No.** (

to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor") and
Videolocity International, Inc. ("Lessee")

| Quantity | Make, Model, and Serial No.  Description |
|---|---|

Supplier(s): Solidtek USA Inc.

850  ACK 571 BLACK PS/2 KEYBOARD
2500  B2161 UNIVERSAL REMOTE


Supplier(s): Archtech Electronics Corporation

760  SURFACE MOUNT BOX OR DESKTOP
820  6' SVP5 MD4M/M SVIDEO CABLE
760  CAT5 ENHANCED 14FT
760  CAT5 ENHANCED 50FT
760  CAT3 RJ12 10FT
820  6" DUAL RCA PATCH CORD AUDIO CABLE
225  RACEWAY CONDU 3/4", 6FT LENGTH/PC 120FT/CM
150  RACEWAY INTERNAL CORNER, 10PC/CTN
225  SPLICE COVER, ¾", 10PC/CTN

Equipment Location(s):  1762-A Prospector Avenue, Park City, , UT, 84060

LESSOR:                                          LESSEE:
IFC Credit Corporation                           Videolocity International, Inc.

_____                          _____
Authorized Signature                             Authorized Signature

                                                 Robert E. Holt
                                                 Name

        Stephen S. Csar                          President
        Vice President                           Title

*RH*

**Exhibit A to Lease Schedule No. 0t**

to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor") and
Videolocity International, Inc. ("Lessee")

| Quantity Make, Model, and Serial No.  Description |
|---|

Supplier(s):  Solidtek USA Inc.

850  ACK 571 BLACK PS/2 KEYBOARD
2500  B2161 UNIVERSAL REMOTE

Supplier(s):  Archtech Electronics Corporation

760  SURFACE MOUNT BOX OR DESKTOP
820  6' SVPS MD4M/M SVIDEO CABLE
760  CAT5 ENHANCED 14FT
760  CAT5 ENHANCED 50FT
760  CAT3 RJ12 10FT
820  6" DUAL RCA PATCH CORD AUDIO CABLE
225  RACEWAY CONDU 3/4"', 6FT LENGTH/PC 120FT/CM
150  RACEWAY INTERNAL CORNER, 10PC/CTN
225  SPLICE COVER, ¾", 10PC/CTN

Equipment Location(s):  1762-A Prospector Avenue, Park City, , UT, 84060

**LESSOR:**                              **LESSEE:**
IFC Credit Corporation                   Videolocity International, Inc.

_____                  _____
Authorized Signature                     Authorized Signature

                                         Robert E. Holt
                                         Name

Stephen S. Csar                          President
Vice President                           Title

## FIRST AMENDMENT TO LEASE SCHEDULE NO. 004

**This First Amendment** is made on this 31st day of December, 2003 to that certain Master Lease Agreement No. 801026 dated December 31, 2003 (the "Agreement") as it pertains to Lease Schedule No. 004 dated December 31, 2003 (the "Lease Schedule") between the undersigned parties.

**Whereas,** the parties hereto desire to amend certain of the terms of the Lease Schedule as hereinafter provided:

**Now Therefore,** in consideration of the premises and the mutual obligations hereinafter contained, and for other good and valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1.  So long as no Event of Default shall have occurred and be continuing and the Lease Schedule has not been earlier terminated, Lessee, upon giving Purchase Notice to Lessor, may purchase all, but not less than all, of the Equipment subject to said Lease Schedule at the expiration of the Initial Term or any Renewal Term on an "as is," "where is" basis for cash equal to (a) the greater of (i) the Fair Market Value of the Equipment (hereinafter defined) as of the end of the Initial Term, or (ii) $15,675.00, plus (b) all applicable sales, use, property or excise taxes on or measured by such sale and any other expenses of transfer (collectively, the "Purchase Price"). Lessee's payment to Lessor of the Purchase Price as determined above shall be due Lessor no later than the expiration date of the Initial Term or any Renewal Term, or Lessee shall be deemed to have waived its option to purchase the Equipment.

2.  Once the Lessor has been given a Termination Notice, then the term of the Lease Schedule applicable to the Equipment shall automatically and without further action on the part of Lessor or Lessee be extended for an additional consecutive term of twelve (12) months (the "Extended Term") at a monthly rental equal to $3,880.00 (the "Extended Term Rental"), with each Extended Term Rental being due and payable on the first day of each month of the Extended Term.

3.  For purposes of the Agreement, "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell, provided, however, that in such determination: (a) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Agreement; (b) in the case of any installed Equipment, such Equipment shall be valued on an installed basis; and (c) costs of removal from its current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value within fifteen days after Lessee has given Purchase Notice to Lessor, then Lessor shall appoint an independent appraiser to determine Fair Market Value, and such appraisal value shall be final, binding and conclusive in determining the Fair Market Value of the Equipment. Lessee shall bear all costs associated with any such appraisal. Lessee shall be deemed to have waived its option to purchase the Equipment unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen days after Fair Market Value is determined (by agreement or appraisal).

4.    All capitalized terms not defined herein shall have the meanings set forth in the Agreement. The Agreement and the Lease Schedule, as amended hereby, shall remain in full force and effect, and are in all respects hereby ratified and affirmed. In the event of any conflict between the Agreement, the Lease Schedule, and this First Amendment to Lease Schedule, the First Amendment to Lease Schedule shall govern. The notices to Lessor relative to Lessee's exercise of any purchase option should be sent via certified mail to: IFC Credit Corporation, 8700 North Waukegan Road, Suite 100, Morton Grove, IL 60053, Attention: Manager, Lease Terminations.

**In Witness Whereof,** the parties hereto have caused this amendment to be executed by their duly authorized officers as of the day and year first above written.

**LESSOR:**                                    **LESSEE:**

IFC CREDIT CORPORATION              VIDEOLOCITY INTERNATIONAL, INC.

                                               By: _____
                                                      Authorized Signature
_____
Authorized Signer
                                               Robert E. Holt_____
                                               Name

                                               President_____
                                               Title

## IRREFUTABLE DELIVERY & ACCEPTANCE

LESSEE:               **Videolocity International, Inc.**
                      **358 South 700 East, Suite B604**
                      **Salt Lake City, UT 84102**

RE:          Lease Schedule No. 004 to Master Lease Agreement No. 801026 between IFC Credit Corporation
             (as "Lessor") and Videolocity International, Inc. (as "Lessee")


It is understood by and among the parties that monies advanced by LESSOR to any supplier, vendor or manufacturer for, but not limited to equipment, software, service contracts, training, shipping, handling, and installation expenses pursuant to the above referenced Equipment Lease ("LEASE") shall be deemed to validate and cause to become effective the said LEASE at the time the monies are forwarded to the LESSEE or any supplier, vendor or manufacturer. It is further understood among the parties that any advanced monies are the result of a specific request by the LESSEE and that the LESSEE shall remain fully responsible under all the terms and conditions of said LEASE, irrespective of any other parties performance, action, or lack thereof including but not limited to the functionality of equipment, computer software, equipment service or training, or the ability of any supplier, vendor or manufacturer to make available such equipment at any specific time. **LESSEE HEREBY CERTIFIES** that all items of equipment described in the LEASE are in good order and condition and are acceptable to the LESSEE **AS IS, WHERE IS.**


LESSEE:

**Videolocity International, Inc.**


By: _____

Name:  Robert E. Holt_____

Title:   President_____


**DATED:**          **December 31, 2003**



CREDIT CORPORATION

## NOTICE OF DEFAULT AND ACCELERATION
### May 9, 2008
## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mission of Nevada, Inc. (Corporate Guarantor)
Attn: Andrew Zimmerman
1 W. Mayflower Avenue
North Las Vegas, NV. 89030

RE:    801026-004    Fax: (702) 399-3976

**Dear Sir or Madam:**

**Notwithstanding IFC Credit Corporation's efforts to resolve the delinquent status of your account, we now find no alternative but to** accelerate the subject Lease Agreement, a copy of which is enclosed, and make demand upon you for full performance **pursuant to the terms and conditions set forth under said Agreement.**

**Be hereby advised that events of default, in accordance with the terms of the subject Agreement, have occurred, and continue as of this date. As a result of such events of default:**

1.    We HEREBY declare the entire amount under the Agreement immediately due and payable.

2.    We HEREBY MAKE DEMAND upon you for immediate payment of all amounts due under said Agreement, as set forth below, in the amount of $141,432.75.

3.    NOTICE is given to you that we intend to assert all available rights and remedies under the Agreement, including and without limitation the right to recover attorney's fees and costs incurred in connection with Lessee's default; the right to recover from Lessee all reasonable expenses incurred in retaking, holding and preparing the equipment for sale of other disposition; and the right to recover all amounts due and owing to us:



MEMBER
ELA
Equipment
Leasing
Association
of America

MEMBER
UAEL



CREDIT CORPORATION

Page two
Lease No.  801026-004

| | |
|---|---|
| Renewals Due | =$50,005.00 |
| Late Charges Due | =$26,200.00 |
| Previous Sales Tax Due | =$5,704.00 |
| Purchase Option (includes 7.25% sales tax) | =$59,523.75 |
| BALANCE DUE IFC Credit (Subject to final Audit upon Payment) | =$141,432.75 |

**If receipt of certified funds in the amount of $141,432.75, and return of the subject equipment, has not occurred by 5/15/08, Lessee is advised that we will have no alternative but to immediately enforce our legal rights and remedies under said Agreement to enforce compliance therewith.** Receipt of any monies less than the entire amount demanded herein will not alter our rights or intention under the terms of the subject Agreement.  Any such sums received will be deposited and applied against the sums due, but no such act shall cure any default declared herein or affect acceleration of all sums due as set forth herein.

Sincerely,

Robert Polonsky
Asset Manager
IFC Credit Corporation

encl.
cc:     Regular Mail





Counterpart No. 1

LEASE SCHEDULE NO. 005
to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Videolocity International, Inc. ("Lessee")

**EQUIPMENT:**    SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.

**EQUIPMENT LOCATION:**    SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.

**LEASE COMMENCEMENT DATE:**    The term of this Lease Schedule shall begin on the date Lessee executes an Irrefutable Delivery and Acceptance (the "Lease Commencement Date") and shall continue for a period of forty-four (44) months beginning on July 1, 2004 (the "Initial Term Start Date").

**INITIAL TERM:**    44 months

**LEASE RENTAL PAYMENT:**    Lessee shall pay as monthly rental during the Initial Term $1,072.69 plus applicable taxes, which amount shall be due and payable in advance on the first day of each month during the Initial Term.  Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice.

**ADVANCE PAYMENT:**    Lessee shall pay $2,145.38 plus applicable taxes, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the First and Last Lease Rental Payment(s).

**EQUIPMENT DISCLAIMER AND AGREEMENT:**    Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us.  We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, **ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE.   NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.**

**LESSEE'S ACKNOWLEDGEMENT:**    Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows:
(a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or otherwise, so assigned shall be absolutely unconditional and shall be payable whether or not the Lease are terminated by operation of law, any act of the parties, or

Initials

1

Version 2.1 – 6/02
Equipment Schedule



otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon.  All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 30th day of June, 2004.

LESSOR:                                              LESSEE:

IFC CREDIT CORPORATION                    VIDEOLOCITY INTERNATIONAL, INC.

_____                      _____
Authorized Signer                                     Authorized Signature

Susan M. Yates                                       Robert E. Holt_____
Director of Contract Admin.                        Name

                                                              President_____
                                                              Title

Counterpart No. 1 of this Lease Schedule is the only Original.  All other counterparts are duplicate originals.  A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1.  Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

2

**Exhibit A to Lease Schedule No. 005**

to Master Lease Agreement No. 801026 dated December 31, 2003 (the "Lease")
between IFC Credit Corporation ("Lessor") and
Videolocity International, Inc. ("Lessee")

| Quantity, Make, Model, and Serial No. | Description |
|---|---|

**Supplier(s):  IBM Corp.**

   (8) WS-C2950ST-24-LRE 24-port 2950-based Long Reach Ethernet Switch
   (8) CAB-AC Power Cord, 110V
   (4) PS-1M-LRE-48 POTS Splitter, 1MHz, 48 Port
      Freight

**Supplier(s):  Excelsus c/o Pulse Engineering, Inc.**

   (730)  330P2J   Z-Blocker, ADSL over POTS In-Line Filter
      Freight

**Supplier(s):  Millennium Stars, Inc.**

   (475)  MS-TLP602 Power Strips
   (750)  6300-ADO Cable Anchors
      Freight

**Supplier(s):  O'Callaghan's Printing**

   (1,000)  Standard Sign Foot for Information Cards
   (5,000)  Information Cards 6" x 4" on 14 pt. C2S UV
   (1,000)  Keyboard labels
   (1,000)  Remote labels
   (2,000)  Clear Polypropylone Stickers
   (1,000)  Disclaimer label-keyboard
   (1,000)  Disclaimer label-remote

**Supplier(s):  Tim Kisner, Independent Contractor**

     Installation

**Equipment Location(s):  115 East Tropicana, Las Vegas, NV 89109**

**LESSOR:**
IFC Credit Corporation
_____
Authorized Signature

Susan M. Yates
of Contract Admin.

**LESSEE:**
Videolocity International, Inc.
_____
Authorized Signature
Robert E. Holt
Name
President
Title

FIRST AMENDMENT TO LEASE SCHEDULE NO. 005

This First Amendment is made on this 14th day of September, 2004 to that certain Master Lease Agreement No. 801026 dated December 31, 2003 (the "Agreement") as it pertains to Lease Schedule No. 005 dated June 30, 2004 (the "Lease Schedule") between the undersigned parties.

Whereas, the parties hereto desire to amend certain of the terms of the Lease Schedule as hereinafter provided:

Now Therefore, in consideration of the premises and the mutual obligations hereinafter contained, and for other good and valuable consideration, the receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1.    So long as no Event of Default shall have occurred and be continuing and the Lease Schedule has not been earlier terminated, Lessee, upon giving Purchase Notice to Lessor, may purchase all, but not less than all, of the Equipment subject to said Lease Schedule at the expiration of the Initial Term or any Renewal Term on an "as is," "where is" basis for cash equal to (a) the greater of (i) the Fair Market Value of the Equipment (hereinafter defined) as of the end of the Initial Term, or (ii) $5,154.02, plus (b) all applicable sales, use, property or excise taxes on or measured by such sale and any other expenses of transfer (collectively, the "Purchase Price"). Lessee's payment to Lessor of the Purchase Price as determined above shall be due Lessor no later than the expiration date of the Initial Term or any Renewal Term, or Lessee shall be deemed to have waived its option to purchase the Equipment.

2.    Once the Lessor has been given a Termination Notice, then the term of the Lease Schedule applicable to the Equipment shall automatically and without further action on the part of Lessor or Lessee be extended for an additional consecutive term of twelve (12) months (the "Extended Term") at a monthly rental equal to $1,423.90 (the "Extended Term Rental"), with each Extended Term Rental being due and payable on the first day of each month of the Extended Term.

3.    For purposes of the Agreement, "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell, provided, however, that in such determination: (a) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Agreement; (b) in the case of any installed Equipment, such Equipment shall be valued on an installed basis; and (c) costs of removal from its current location shall not be a deduction from such valuation. If Lessor and Lessee are unable to agree on the Fair Market Value within fifteen days after Lessee has given Purchase Notice to Lessor, then Lessor shall appoint an independent appraiser to determine Fair Market Value, and such appraisal value shall be final, binding and conclusive in determining the Fair Market Value of the Equipment. Lessee shall bear all costs associated with any such appraisal. Lessee shall be deemed to have waived its option to purchase the Equipment unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen days after Fair Market Value is determined (by agreement or appraisal).

4.  All capitalized terms not defined herein shall have the meanings set forth in the Agreement. The Agreement and the Lease Schedule, as amended hereby, shall remain in full force and effect, and are in all respects hereby ratified and affirmed. In the event of any conflict between the Agreement, the Lease Schedule, and this First Amendment to Lease Schedule, the First Amendment to Lease Schedule shall govern. The notices to Lessor relative to Lessee's exercise of any purchase option should be sent via certified mail to: IFC Credit Corporation, 8700 North Waukegan Road, Suite 100, Morton Grove, IL 60053, Attention: Manager, Lease Terminations.

**In Witness Whereof,** the parties hereto have caused this amendment to be executed by their duly authorized officers as of the day and year first above written.

**LESSOR:**                                               **LESSEE:**

IFC CREDIT CORPORATION                       VIDEOLOCITY INTERNATIONAL, INC.

_____                       By: _____
Authorized Signer                                        Authorized Signature

**Susan M. Yates**
Director of Contract Admin

                                                                Robert E. Holt_____
                                                                Name

                                                                President_____
                                                                Title

# IRREFUTABLE DELIVERY & ACCEPTANCE

LESSEE:      **Videolocity International, Inc.**
             **358 South 700 East, Suite B604**
             **Salt Lake City, UT 84102**

RE:          Lease Schedule No. 005 to Master Lease Agreement No. 801026 between IFC Credit Corporation (as "Lessor") and Videolocity International, Inc. (as "Lessee")

It is understood by and among the parties that monies advanced by LESSOR to any supplier, vendor or manufacturer for, but not limited to equipment, software, service contracts, training, shipping, handling, and installation expenses pursuant to the above referenced Equipment Lease ("LEASE") shall be deemed to validate and cause to become effective the said LEASE at the time the monies are forwarded to the LESSEE or any supplier, vendor or manufacturer. It is further understood among the parties that any advanced monies are the result of a specific request by the LESSEE and that the LESSEE shall remain fully responsible under all the terms and conditions of said LEASE, irrespective of any other parties performance, action, or lack thereof including but not limited to the functionality of equipment, computer software, equipment service or training, or the ability of any supplier, vendor or manufacturer to make available such equipment at any specific time. **LESSEE HEREBY CERTIFIES** that all items of equipment described in the LEASE are in good order and condition and are acceptable to the LESSEE **AS IS, WHERE IS**.

**LESSEE:**

**Videolocity International, Inc.**

By:    _____

Name:  Robert E. Holt

Title:  President

DATED:      June 30, 2004



CREDIT CORPORATION

## NOTICE OF DEFAULT AND ACCELERATION
### May 9, 2008
## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mission of Nevada, Inc. (Corporate Guarantor)
Attn: Andrew Zimmerman
1 W. Mayflower Avenue
North Las Vegas, NV. 89030

**RE:    801026-005    Fax: (702) 399-3976**

**Dear Sir or Madam:**

Notwithstanding IFC Credit Corporation's efforts to resolve the delinquent status of your account, we now find no alternative but to accelerate the subject Lease Agreement, a copy of which is enclosed, and make demand upon you for full performance **pursuant to the terms and conditions set forth under said Agreement.**

Be hereby advised that events of default, in accordance with the terms of the subject Agreement, have occurred, and continue as of this date. As a result of such events of default:

1. We HEREBY declare the entire amount under the Agreement immediately due and payable.

2. We HEREBY MAKE DEMAND upon you for immediate payment of all amounts due under said Agreement, as set forth below, in the amount of $36,615.50.

3. NOTICE is given to you that we intend to assert all available rights and remedies under the Agreement, including and without limitation the right to recover attorney's fees and costs incurred in connection with Lessee's default; the right to recover from Lessee all reasonable expenses incurred in retaking, holding and preparing the equipment for sale of other disposition; and the right to recover all amounts due and owing to us:

MEMBER

ELA
Equipment
Leasing
Association
of America

8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702

MEMBER




CREDIT CORPORATION

Page two
Lease No.  801026-005

| | |
|---|---|
| **Renewals Due** | =$16,882.00 |
| **Late Charges Due** | =$214.00 |
| **Purchase Option**<br>**(includes 7.25% sales tax)** | =$19,519.50 |
| **BALANCE DUE IFC Credit**<br>**(Subject to final Audit upon Payment)** | =$36,615.50 |

**If receipt of certified funds in the amount of $36,615.50, and return of the subject equipment, has not occurred by 5/15/08, Lessee is advised that we will have no alternative but to immediately enforce our legal rights and remedies under said Agreement to enforce compliance therewith.** Receipt of any monies less than the entire amount demanded herein will not alter our rights or intention under the terms of the subject Agreement.  Any such sums received will be deposited and applied against the sums due, but no such act shall cure any default declared herein or affect acceleration of all sums due as set forth herein.

Sincerely,

Robert Polonsky
Asset Manager
IFC Credit Corporation

encl.
cc:    Regular Mail





8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702